362 So.2d 620 (1978)
Taylor Sumner SPRADLING
v.
Ivy Dean SPRADLING.
No. 50564.
Supreme Court of Mississippi.
September 6, 1978.
Shed Hill Roberson, Leon L. Porter, Jr., Clarksdale, for appellant.
*621 Holcomb, Dunbar, Connell, Merkel, Tollison & Khayat, Jane M. Wilbourn, Jack F. Dunbar, Clarksdale, for appellee.
Before SMITH, WALKER and BOWLING, JJ.
BOWLING, Justice, for the Court:
Modification of a decree granting alimony is the subject of this appeal. The Chancery Court of Coahoma County reduced the alimony award previously granted appellant in the divorce decree. Appellant contends that this reduction was erroneous. We agree and reverse and render a decree here.
By decree of April 12, 1974, the special chancellor granted appellant a divorce from appellee. Incorporated in the decree was an agreement previously entered into between the parties, both of whom were represented by competent attorneys. The agreement and subsequent decree provided that beginning April 20, 1974, appellee would pay to appellant the sum of $900 per month as alimony so long as the parties shall live or appellant remains single. The decree, pursuant to the agreement, further provided that appellant would have the right to use and occupy the prior home of the parties through June 1, 1977, after which time either party would be at liberty to apply for a partition sale of said property in the event they could not otherwise agree on its disposition. The appellant was required to make the monthly payments on the outstanding mortgage on the property, including taxes and insurance payments. In the decree appellee received a 1971 Mercedes automobile but was required to pay, pursuant to his agreement, the sum of $4500 to appellant to purchase another vehicle. The other principal provision of the decree gave appellant the custody of the fifteen-year-old son of the parties, and required support payments in addition to the above mentioned alimony obligation.
On February 19, 1976, appellee filed a "Petition for Modification of Final Decree." This petition set out that the son, whose custody previously was given appellant, had elected to move into the apartment occupied by appellee. The only request under the prayer of the petition was that the original divorce decree be modified to award appellee the use and occupancy of the dwelling house so that he could move therein with the son; that if this request should be granted, the alimony payments should be reduced in an amount equivalent to the monthly payment on the property including taxes and insurance.
Appellant filed an answer to the modification petition denying the essential allegations. In addition thereto, appellant filed a cross-petition requesting an increase in alimony payments due to inflation and increased expenses. We do not find an answer to this cross-bill in the record and no answer, or lack of it, is mentioned in the record  by the attorneys of either party or by the court.
By order of April 16, 1976, the chancellor "by agreement of the parties" passed the cause for hearing in vacation. After the passing of a subsequent term of court, the cause was then heard on August 12, 1976, in vacation. The gist of the evidence at that hearing was that appellant was then enrolled at Delta State University and expected to receive her degree in December of that year. The proof was that the house was in a state of needed repairs and that appellant's schooling would be seriously interrupted if she was forced to move prior to concluding the school session. On August 12, 1976, the chancellor entered a temporary decree reserving further hearing and decision on appellee's original petition, as well as cross-petition, until after January 1, 1977. The decree directed that appellant retain possession of the house and contents therein and in the meantime she was granted an additional sum of $100 per month for necessary repairs to the house.
Appellee attempted to appeal the temporary decree of the chancellor to this Court and the appeal was dismissed.
On January 3, 1977, appellee filed a motion for a hearing of the cause based on the chancellor's temporary decree of August 12, 1976. Appellant filed her response to the motion, setting out that the parties had *622 mutually agreed on the sale of the residence by July 1, 1977, and an equal division of the proceeds of the sale. It was agreed that appellant would retain possession of the residence until July 1, 1977.
The cause was then heard again in vacation on February 26, 1977, with testimony being given by both appellant and appellee. After the hearing, the court rendered its final decree with the following provisions: (1) A general increase in the cost of living since the original divorce decree was to the extent of fifteen percent; (2) appellant had secured gainful employment as a teacher and was receiving a net salary of $522 per month, from which approximately $100 per month was necessary for travel expenses; (3) the agreed sale of the residence would yield appellant approximately $32,500; (4) the money received by appellant could be used to yield additional income of $139 per month; (5) the elimination of the house payments would reduce appellant's housing expense in the amount of $85 per month; (6) appellant's additional income should result in a decrease of appellee's support alimony requirements to the extent of $175 per month; (7) applying the above reasoning, the court held that the monthly alimony payments should be reduced to the amount of $576 per month. The court denied appellant's request for attorney's fees for her representation in the hearing on February 26th.
Appellant advances the following assignments of error: (1) Both the August, 1976, and the February, 1977, decrees were void for the reason that they were held in vacation contrary to the provisions of Mississippi Code Annotated section 93-5-17 (1972); (2) the chancellor erred in refusing to admit evidence of increased earnings of appellee subsequent to the divorce decree and particularly for the year 1976; (3) the chancellor erred in reducing the alimony from that ordered in the original divorce decree; and (4) the chancellor should have allowed appellant attorneys' fees for the February 26, 1977, hearing.
There is no merit in the first assignment of error. By the clear language of the statute, section 93-5-17 applies only to divorce proceedings and reads in part:
The proceedings to obtain a divorce shall not be heard or considered nor a decree of divorce entered except in open court at a regular or special term of the court, ... . (Emphasis ours).
The controlling statute is Mississippi Code Annotated section 9-5-91 (1972), which clearly authorizes the chancellor, in his discretion, to set cases for hearing in vacation. This, by its clear implication, includes any hearing for modification of an award of alimony in an original divorce proceeding. Section 93-5-17 clearly only applies to "proceedings to obtain a divorce."
Assignments of error Nos. 2 and 3 may be considered together. The testimony at the hearing on February 26, 1977, was practically undisputed. In December, 1976, appellant had received her degree and beginning the first of 1977, she secured a teaching position in an adjoining county under the federally funded Title I program. This was to last for a period of five months after which appellant did not know when or where she would secure future employment. For this temporary position she was to receive a net salary of $522.68 per month, out of which she would pay her travel, car and other expenses. She owned and was driving a 1971 model car that needed repairs and was not in substantially good running condition.
Appellant's testimony showed that she was forced to borrow $1,000 to complete her education and this sum is still owed. Pursuant to competent appraisals, appellant expected to receive approximately $32,500 in cash as her equity in the house. The undisputed testimony was that appellant had arranged to purchase an old residence and remodel it, with the cost being at least equal to the amount she would receive for her share of the sale of the residence. An additional sum of at least $5,000 would be required for appliances. She estimated that it would be necessary for her to borrow a sum of approximately $15,000 to finally move in the house, and that her payments *623 would be approximately $200 per month. Appellant did not have and was not able to purchase any form of health or hospitalization insurance. She was married to appellee for twenty-three years and was forty-six years of age at the time of the hearing. The testimony also shows that she paid income tax on the monthly amounts received under the decree.
The record reveals that at the time of the divorce decree appellee's gross income was $45,202. During the year 1976, this had increased to $53,664. He owned at least sixty percent of a business which in 1974 had retained earnings of $108,648, and in 1975, these earnings increased to $184,313. The taxable income had increased from approximately $40,000 in 1974 to approximately $100,000 in 1975. There was no contest on the part of appellee as to his ability to pay. The principal contention was that the alimony payments should be decreased because appellant was then gainfully employed and would not have to make the monthly house payments on the original residence. He contends that sufficient change in circumstances had occurred to authorize the chancellor to reduce the alimony payments.
Mississippi Code Annotated section 93-5-23 (1972) authorizing an alimony decrease provides: "The court may afterwards, on petition, change the decree, and make from time to time such new decrees as the case may require." (Emphasis ours).
In the case of Clark v. Clark, 133 Miss. 744, 98 So. 157 (1923), the Court, in denying a change of alimony payments, said:
On the hearing of the petition by the chancellor, the proof showed conclusively there had been no substantial change in the circumstances of the parties since the rendition of the decree allowing the alimony of seventy-five dollars per month to the wife, which decree had been granted at a previous term of the court during the year before. The testimony does disclose some slight changes in the condition and circumstances of the parties, yet there is no such difference as would warrant the court in changing or abolishing the alimony upon that ground. (Emphasis supplied).
In Malone v. Malone, 159 Miss. 138, 131 So. 870 (1931), the Court said:
If it be conceded that the appellant is wrong in both of these contentions, which we do not now decide, still we think the decree of the court below must be reversed, for the reason that the testimony does not show any such substantial change in the condition and circumstances of the parties as would warrant the court in changing or altering the allowance made in the former decree. Whatever authority the court had to change, alter, or modify this former decree must find its foundation in some substantial change in the condition and circumstances of the parties. (Emphasis supplied).
In the recent case of Savell v. Savell, 290 So.2d 621 (Miss. 1974), this Court reaffirmed the statements made in the Clark and Malone cases, stating:
... [T]here must be a material or substantial change in the circumstances of the parties to justify changing the original decree or making a new one.
We have seen in the above cases that the Court refers to both "parties." This was recognized in Bunkley & Morse, Amis on Divorce and Separation in Mississippi, section 6.11 (1957), where it is said:
Courts of equity in determining whether an award of alimony in a divorce should be modified should consider the present status of the parties and inquire into their respective earning abilities and probable future prospects and all other circumstances which might bear on the subject, such as age, sex, health and station in life.
Therefore, we hold that it was error for the chancellor not to consider the substantial increase in earnings of appellee between the divorce decree of April, 1974, and the modification decree of February, 1977.
Did the evidence show a "substantial change in circumstances of the parties?" The principal changes admittedly were: (1) Appellant had received her degree and had *624 entered into a five-month teaching agreement; (2) the residence would be sold on July 1, 1977, with appellant receiving her half of the net proceeds in the sum of approximately $32,500, and the payments of the mortgage on that house would be eliminated.
As hereinbefore stated, appellant's testimony is in effect undisputed. The lower court, in its opinion, reasoned that appellant could derive an investment income from the proceeds of the sale of the house. This is contrary to the evidence to the effect that an old house already had been selected and that the repairs and remodeling would use all of the income from the prior residence. In addition, a loan would be necessary to be repaid in monthly installments of approximately $200 each and taxes, insurance and maintenance expenses would continue. Appellee contended, and the lower court agreed, that the elimination of the monthly payments by appellant on the prior residence would materially change her circumstances. In the first place, we think it is unrealistic to conclude that appellant could provide her housing, even though inferior to that at the time of the divorce, including loan payments, repairs, utilities, and other various expenses for any less than the amount she had been paying on the prior residence. As we have seen, the fact that appellant would receive a considerable sum from the sale of the residence does not improve her position. In addition to that, appellee, at the time of his original agreement, knew of appellant's one-half ownership of the house and this was set out in the decree. He knew that a disposition of the house would be made on or after July 1, 1977. The receipt of the sale proceeds was not a change of circumstances; it was present at the time of the original agreement as incorporated in the original decree.
The lower court did not discuss and did not seem to take into consideration the circumstances that appellant is not getting any younger, has no health or hospitalization insurance, and obviously has no savings or other means of future security. Certainly, she would have a right to the opportunity to prepare for old age, or even the possibility of appellee dying or becoming disabled. Appellant's testimony is undisputed that she will incur expenses of upgrading her education, and at the time of the hearing she was in need of dental work costing $600.
The chancellor ordered a substantial reduction in the alimony payments because appellant had commuted from Clarksdale to Cleveland for a long period of time, had borrowed money, and had worked hard to obtain a degree to aid in her future support. The modified decree penalizes appellant for being industrious and endeavoring to accomplish something rather than depend on appellee regardless of future circumstances. We do not think the law of alimony contemplates such a penalty.
The parties do not cite any Mississippi cases regarding a change of alimony payments based solely on the wife later entering gainful employment. Several cases are cited from other jurisdictions but there is no necessity for this Court to consider or cite those cases in this opinion.
Nowhere in the pleadings was a request made to reduce the alimony payments due to employment of appellant. Regardless of this, the court and the parties litigated that issue and it should be settled by this Court. We agree with the learned chancellor that there has been a substantial increase in the cost of living since April, 1974. A reinstatement of the original monthly alimony payments does not take this into consideration. The temporary work done by appellant resolves that situation. Realizing that every case is different, we hold in this case that considering only the new employment by appellant, whether temporary or permanent, this does not rise to a substantial change of circumstances sufficient to modify the alimony payments.
From the foregoing discussion, we believe it clear that the evidence in this case does not show a substantial change in circumstances of the parties from those existing at the time of the original agreement and original decree. Therefore, we reverse the cause and render judgment here reinstating *625 the monthly alimony payments of $900 per month.
We find that the chancellor should have allowed appellant a reasonable attorney's fee for representing her in the hearing on February 12, 1977, and we think a reasonable fee would be the sum of $750. Harrison v. Harrison, 285 So.2d 752 (Miss. 1973); Barber v. Barber, 234 Miss. 89, 105 So.2d 630 (1958); Gresham v. Gresham, 199 Miss. 778, 25 So.2d 760 (1946).
Appellant has filed a motion for an award of an attorney's fee for representing her on this appeal. The usual award in a case such as this is one-half of the fee that was allowed, or should have been allowed, by the lower court. Therefore, appellant's motion is sustained and judgment will be rendered here for appellant against appellee in the sum of $375 as attorney's fee for representation in this Court.
The cause is therefore reversed and judgment entered reinstating the monthly alimony payments of $900 and judgment for attorney's fees in the total sum of $1,125.
REVERSED AND RENDERED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and COFER, JJ., concur.