644 So.2d 446 (1994)
Perry Jones HOCKADAY
v.
Karleen Barnes HOCKADAY.
No. 92-CA-00458.
Supreme Court of Mississippi.
October 20, 1994.
Jack Parsons and Rebecca C. Taylor, Parsons & Taylor, Wiggins, for appellant.
Dean Holleman and J. Boyce Holleman, Gulfport, for appellee.
Before PRATHER, P.J., and SULLIVAN and JAMES L. ROBERTS, Jr., JJ.
JAMES L. ROBERTS, Jr., Justice, for the Court:
Perry Jones Hockaday, hereinafter Perry, and Karleen Barnes Hockaday, hereinafter Karleen, were married on March 1, 1961. Perry and Karleen were divorced in the Chancery Court of Jackson County, Mississippi, in a final judgment dated July 28, 1988. On March 18, 1991, seeking to reduce or terminate Karleen's periodic alimony and asserting a material and substantial change in circumstances, Perry filed a Petition to Modify the Decree. In his original ruling dated September 30, 1991, the chancellor denied any reduction in the periodic alimony. Following Perry's Motion to Reconsider, the chancellor temporarily reduced the periodic alimony payments by $250.00 per month until such time as the lump sum alimony was paid in full. Thereafter the original periodic alimony amount of $2,250.00 per month was to be reinstated. Perry now appeals, arguing that the lower court erred in failing to permanently terminate or reduce the periodic alimony payments required of him in an amount commensurate with the change of circumstances shown since the rendition of the divorce. Finding the chancellor was not manifestly wrong in refusing to permanently reduce or terminate Karleen's periodic alimony, we affirm.

FACTS
Perry, a general surgeon in Jackson County, Mississippi, and Karleen were married on March 1, 1961. Two children were born of the union, both of whom were emancipated at the time of the divorce. Karleen was granted a divorce on the grounds of adultery in a partial judgment of divorce dated September 15, 1987. A complete judgment of divorce was entered on July 28, 1988. In that judgment the chancellor required Perry to pay Karleen periodic alimony in the amount of $2,250.00 per month. Karleen was also awarded lump sum alimony in the amount of $130,000.00, payable as follows:
The sum of $30,000.00 to be due and payable on August 20, 1988, with the balance of $100,000.00 payable in the sum of $20,000.00 per year for a period of five (5) years, beginning on June 30, 1989, and to be due and payable on or before the 30th day of June of each year, until paid in full.
Perry was required to provide Karleen with hospitalization, health and dental insurance. Karleen was given exclusive use and possession of the marital home until such time as she remarries or dies. Karleen was also awarded attorney's fees of $7,500.00. By agreement of the parties and order of the court all jointly owned stock was equally divided. Perry was taxed with all court costs.
*448 On March 18, 1991, Perry filed a petition to modify the divorce decree and reduce or terminate the periodic alimony award. Perry asserted a substantial and material change of circumstances warranted a modification.
The testimony at the hearing centered around the income, debts and living expenses of the parties. At the time of the divorce Karleen was not employed and had not worked since before the marriage when she was employed as a nurse. At the time Perry filed the petition to modify, Karleen was working at Charter Academy in Mobile, Alabama. Her 1990 tax return reflects that she earned $24,584 from her employment at Charter Academy. At the time of the hearing, Karleen's hours had been reduced and she was working only 24 hours per week at $12.60 per hour. Karleen's 1990 tax return showed a total income of $59,180.00. This figure included $24,584.00 in wages, $27,000.00 in periodic alimony, $5,498.00 in interest, $1,0901.00 in dividends, $110.00 in net gain from the sale of real property and $87.00 in other income. The $20,000.00 in lump sum alimony was not included in this figure. Karleen testified that she had about $80,000.00 in the bank which included the lump sum alimony. She was saving this money and reinvesting the interest for her retirement. There was no testimony on Karleen's living expenses.
Most of Perry's testimony centered around issues that do not concern us on this appeal. The testimony concerning Perry's income and expenses is somewhat confusing. Perry's adjusted gross income has increased each year since the divorce. He offered into evidence what he said was an accurate representation of his income and expenses. Perry testified as to this financial statement while Karleen objected to some of its obvious inaccuracies.
Perry's financial statement shows his adjusted gross income (AGI) for 1989 and 1990 to be $137,818.00 and $155,720.00 respectively. These figures do not include his KEOGH contributions of $18,052.00 and $17,028.00 for those same years. The approximately $27,000.00 in periodic alimony that he paid has also been deducted before arriving at this figure.

DISCUSSION
As has been stated and restated by this Court, a chancellor's findings will not be disturbed on appeal unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Mount v. Mount, 624 So.2d 1001, 1004 (Miss. 1993); Faries v. Faries, 607 So.2d 1204, 1208 (Miss. 1992); Tinnin v. First United Bank of Miss., 570 So.2d 1193, 1194 (Miss. 1990). This standard in especially applicable to issues arising out of a divorce. Mount, 624 So.2d at 1004; Tilley v. Tilley, 610 So.2d 348, 351 (Miss. 1992).
A modification of periodic alimony may be made by the chancery court when there has been a material change in circumstances arising subsequent to the original decree. Armstrong v. Armstrong, 618 So.2d 1278, 1281 (Miss. 1993); Shearer v. Shearer, 540 So.2d 9, 12 (Miss. 1989); McNally v. McNally, 516 So.2d 499, 502-03 (Miss. 1987); East v. East, 493 So.2d 927, 931 (Miss. 1986); Colvin v. Colvin, 487 So.2d 840, 841 (Miss. 1986); Wray v. Wray, 394 So.2d 1341, 1344 (Miss. 1981).
Perry cites Nichols v. Nichols, 254 So.2d 726, 727 (Miss. 1971), wherein this Court stated:
In determining the amount of alimony to be awarded, consideration must be given to the rights of the husband to lead as normal a life as reasonably possible with a decent standard of living. The general rule is that `the wife is entitled to a reasonable allowance of alimony, commensurate with her accustomed standard of living and the ability of the husband to pay * * *.' Hibner v. Hibner, 217 Miss. 611, 617; 64 So.2d 756, 758 (1953).
The Nichols court reversed the lower court's decision not to modify the alimony award. In that case it was indeed an increase in the wife's income that led to the decision that there should have been a modification of alimony. However, Nichols differs from the case at bar. There, the husband was paying such a large portion of his income in alimony that it resulted in the wife having a much greater standard of living than did he.
*449 Perry argues that this case means that "once the lower court determines a sufficient amount for the wife, it has the duty to test the extent of the burden upon the husband." This is not an accurate interpretation of Nichols. The Court did not necessarily look at the burden upon the husband but in the disparity of the standards of living. The argument fails either way that Nichols is interpreted. There is no real burden on Perry and his standard of living is still significantly greater than Karleen's.
At the time of the divorce Karleen was not employed. Since that time she had begun working at Charter Academy of Mobile. In 1989 she earned $10,420 from that position and in 1990 she earned $24,584.00. Karleen testified that she earned 12.60 per hour but that her hours had been reduced to 24 per week. From this testimony it can be presumed that Karleen's income from working has also been reduced.
In Spradling v. Spradling, 362 So.2d 620 (Miss. 1978), this Court held that when making a determination concerning the modification of alimony a chancellor should consider a substantial increase in earnings by one party subsequent to the decree. See also Bracey v. Bracey, 408 So.2d 1387, 1389 (Miss. 1982). The Spradling Court went on to say that the increase in the husband's earnings must also be considered. In reversing the chancellor's reduction of alimony where the wife got a temporary teaching position after the rendition of the divorce decree the Court stated:
The modified decree penalizes appellant for being industrious and endeavoring to accomplish something rather than depend on appellee regardless of future circumstances. We do not think the law of alimony contemplates such a penalty.
... Realizing that every case is different, we hold in this case that considering only the new employment by appellant, whether temporary or permanent, this does not rise to a substantial change of circumstances sufficient to modify the alimony payments.
Spradling, 362 So.2d at 624.
It was difficult to determine from Perry's exhibits, testimony or brief his true income and expenses. According to Perry's tax returns his adjusted gross income for 1989 and 1990 was $137,818.00 and $155,720.00 respectively. The periodic alimony paid and his KEOGH contributions are already deducted before gaining this figure. Karleen's adjusted gross income for those same years was $43,041.00 and $59,108 respectively. Karleen's AGI did not include the $20,000.00 in lump sum alimony that she received each of those years.
In his financial statement Perry takes his AGI and then deducts his income taxes, the $20,000.00 lump sum amount and an apparently arbitrary $4,000.00 in interest to arrive at what he terms as his total income available for living expenses and other obligations. He stated this amount was $77,213.00 in 1989 and $87,228.00. Perry contends that these amounts were not enough to cover his debts and living expenses for those years. A close look at Perry's financial statement does not support that contention. Perry deducts the lump sum payments twice and lists some debts that are unbelievable and one that did not exist during the years the statement covers. Perry also includes the expenses of his second wife when arriving at his total living expenses.
Perry then argues that Karleen's income of approximately $80,000.00 in 1990 showed their financial positions had substantially equalized. What Perry did not point out is that while he deducted his taxes, the periodic alimony payments and his KEOGH contributions before arriving at his total he did not deduct anything before arriving at what he deems to be Karleen's total income. Karleen paid almost $10,000.00 in federal income tax in 1990. Neither did Perry point out that the vested $20,000.00 in lump sum alimony payments would end with the 1993 payment, lowering Karleen's yearly income by that amount beginning in 1994. It should also be remembered that Karleen's working hours had been reduced as of the time of the hearing, thus lowering her income from that source.
Perry contends that because of Karleen's increase in income since the divorce there should be a modification of the decree. In his brief Perry argues that Karleen went from having no income before the divorce to *450 having an income of almost $80,000.00 in 1990. What Perry does not mention is the sources of this income and how a reduction or termination of periodic alimony would affect it. Karleen's 1990 income can be broken down as follows:

 $24,584 ................... Wages from Charter
 $27,000 ................... Periodic Alimony
 $20,000 ................... Lump Sum Alimony
 $ 5,498 ................... Interest Income
 $ 1,901 ................... Dividend Income
 $ 197 ................... Misc. Income

The majority of Karleen's income comes from alimony. At the time of the hearing Karleen was to receive only two more $20,000.00 lump sum payments. Karleen testified that she invested these payments, as well as the interest derived therefrom, for her retirement. The dividend income was a result of the property settlement and should have been taken into account when alimony was originally awarded. Karleen stated that her working hours had been reduced and therefore so had that income. If Perry's argument is followed, even if Karleen had not been industrious enough to go out and find a job after thirty years outside the labor market, her income would still reflect a substantial increase since the divorce. If Karleen had no job and only the bottom line is looked at she would still have an income of over $50,000.00, whereas, before the divorce she had none. Perry could not then argue that alimony should be reduced because Karleen's income had risen so substantially when it was in fact the alimony that caused the increase. It should be kept in mind that of Karleen's total income only perhaps one quarter was not the direct result of the property settlement or alimony award.
Periodic alimony was temporarily reduced by $250.00 per month until such time as the lump sum award is paid in full. The chancellor was not manifestly wrong when he did not permanently reduce or terminate periodic alimony. Looking at the financial positions of both parties there has not been a substantial change in circumstances. Perry is still in a much better financial position than is Karleen. This assignment of error is without merit.

CONCLUSION
When there is a material change in circumstances subsequent to the decree, the chancery court may modify periodic alimony. Although Karleen has become employed since the time of the divorce and therefore has some income other than alimony there has not been such a substantial change in circumstances as to warrant a permanent reduction or termination of periodic alimony. The chancellor's decision was neither clearly erroneous nor manifestly wrong.
AFFIRMED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion joined by DAN M. LEE, P.J.
McRAE, Justice, dissenting:
Because the chancellor's decision that there was no material change in circumstances warranting a reduction or termination of periodic alimony is not supported by sufficient findings of fact, I respectfully dissent. To the contrary, the chancellor's temporary reduction in periodic alimony payments by $50.00 per month indicates that he made a de facto finding that a material change in circumstances had occurred. Accordingly, the case should be reversed and remanded for further findings. See Pierce v. Pierce, No. 91-CA-00809, ___ So.2d ___, decided on October 13, 1994 (reversed and remanded where chancellor's findings not supported by sufficient findings of fact).
Awards of periodic alimony are governed by the factors set forth in Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147, 153 (1955).[1] *451 Cleveland v. Cleveland, 600 So.2d 193, 196-197 (Miss. 1992). Periodic alimony is, of course, subject to modification by increasing, decreasing or even terminating the award when warranted by a material change in the parties' circumstances. Armstrong v. Armstrong, 618 So.2d 1278, 1281 (Miss. 1993); Cleveland, 600 So.2d at 197. Periodic alimony is intended to help the recipient spouse get a head start on a new life. In the case sub judice, periodic alimony has accomplished its purpose, increasing the wife's earning capacity and narrowing the disparity between the parties' resources. It is not clear, however, whether her resources were adequate to meet her living expenses, or conversely, the true extent of the husband's earnings and the impact of the award on his resources.
My real concern about today's decision, however, lies with the majority's tacit acceptance of a spouse's annual contribution to a KEOGH plan as a reduction in the stream of income upon which an award of alimony may be predicated. In the past, this Court has acknowledged that distributions from a pension plan are part of the stream of income which the chancellor may consider when determining an award of alimony. Brown v. Brown, 574 So.2d 688, 691 (Miss. 1990); Bowe v. Bowe, 557 So.2d 793, 795 (Miss. 1990). See also Powers v. Powers, 465 So.2d 1036 (Miss. 1985) (under Mississippi marital property law, military pension can be divided as part of alimony award). However, the latest pronouncements of this Court have held that pension plans are property, subject to division between the parties upon divorce. Parker v. Parker, 641 So.2d 1133 (Miss. 1994); Hemsley v. Hemsley, 639 So.2d 909 (Miss. 1994); Ferguson v. Ferguson, 639 So.2d 921 (Miss. 1994). But see Davis v. Davis, 626 So.2d 111 (Miss. 1993) (Mississippi not a community property state; one spouse not automatically entitled to half of the other's pension plan); Flowers v. Flowers, 624 So.2d 992 (Miss. 1993) (one spouse does not have a vested interest in the other's civil service pension); Armstrong v. Armstrong, 618 So.2d 1278, 1282 (Miss. 1993) (spouse has no vested right in the other spouse's pension or stock plan). We cannot have it both ways, treating the corpus of the plan as property and contributions to or distributions from the plan as part of the stream of income. To do so would only invite double dipping.
Periodic alimony should serve to rehabilitate the recipient spouse. In this case, it appears that the wife was able to substantially increase her earning capacity while the husband's income declined. However, lacking a sufficient finding of facts to indicate a material change of circumstances, this case should be reversed and remanded for further findings. Furthermore, I would urge my fellow justices to reconcile, once and for all, the issue of whether pension plans are an asset or income. We cannot have our cake and eat it, too.
DAN M. LEE, P.J., joins this opinion.
NOTES
[1] The Brabham factors include "(1) the health of the husband and his earning capacity; (2) the health of the wife and her earning capacity; (3) the entire sources of income of the parties; (4) the reasonable needs of the wife; ... (6) the necessary living expenses of the husband; (7) the estimated amount of the income taxes the respective parties must pay on their incomes; (8) the fact that the wife has free use of the home furnishings and automobile; and (9) such other facts and circumstances bearing on the subject that might be shown on the evidence."

Brabham, 84 So.2d at 153, quoted in Cleveland, 600 So.2d at 196-197.