# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CA-01348-SCT

*DONALD FRANCIS STRUB*

*v.*

*NINA KING STRUB*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/31/95 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY |
| ATTORNEY FOR APPELLANT: | CHARLES O. MOORE |
| ATTORNEY FOR APPELLEE: | VERNON CHADWICK |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 2/13/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SULLIVAN, P.J., McRAE AND ROBERTS, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

This is an appeal by Donald Strub from a modification of alimony payments and order to pay retroactive alimony increases to his ex-wife Nina Strub. Because the chancellor did not err by increasing Donald's alimony payments to Nina and making the increase in alimony retroactive, we hereby affirm her decision.

Donald Strub and Nina King married on May 26, 1962. The couple had two children during their marriage--Denise Fay Strub, born on June 27, 1964, and Timothy Francis Strub, born on February 24, 1966. Unfortunately, the union of the Strubs did not last, and the chancery court entered a judgment for their divorce on February 2, 1983.

The final divorce decree granted Nina King Strub custody of the children and $200 per month in child support for Timothy and for Denise, if she did not go to school a semester or chose to attend summer school. The final decree charged Donald Strub with paying the children's college expenses and providing Nina with one-half interest in all GM stock in both their names, giving her twenty-seven shares. Donald was to pay Nina $200 per month in alimony, granting Nina use of and title to the automobile she was using at the time. Nina received their house at 61 Summer Ridge Drive in

Brandon, Mississippi, so long as the children remained there, along with the furnishings in the house. Donald was responsible for the mortgage, tax, and insurance payments on this house, while Nina was responsible for all maintenance costs.

Subsequently, on March 22, 1994, Nina filed a motion for modification of alimony. At trial, the testimony revealed that Donald has paid Nina $200 per month in alimony on a regular basis since their 1983 divorce. At the time of the hearing on modification, Nina was fifty-four years old. Nina testified that she is a high school graduate; that she has moved from the four-bedroom, three-bath home, after raising their children, into a trailer; and, that over the years since her divorce, she has developed several medical problems, including problems with her kidneys, ear, and foot, and some problems with depression. Nina Strub receives a total net income from Watthour Engineering of approximately $891 per month. As a result of the 1991 partition sale of their Brandon home, the marital residence, she received a one-time payment of $23,750. The testimony established that Nina still has approximately $10,000, her stock, and some of the furniture from her residence in Brandon.

The financial statement she presented indicates that Nina is unable to meet expenses without going into her savings. Nina has a net loss monthly of $520, with net monthly income being $891 and net monthly expenses of $1,412. She has depleted some of her savings already, along with the money she received from the sale of the home, by using those funds to pay bills. So, with regard to Nina Strub's overall situation, the chancellor found that Nina had shown a substantial change in circumstances.

Donald Strub was sixty-one years old at the time of the hearing. The testimony established that he is now retired from his employment with Packard Electric, and he has a monthly income of approximately $2885 gross, $2,376.45 net. Donald owns rental property which is currently showing a taxable and actual loss, and he has savings which are actually located in his checking account. He owns stock, and he has started a company, Strub Associates, Inc., which the record reveals showed approximately $70,000 income in 1993 and $99,000 income in 1994.

At the time of the modification hearing, Donald's assets included the following: $250,000 in rental properties; $24,000 in rental property accounts; $60,000 equity in his present home; $45,000 in GM stock; $7,500 in Wal-Mart stock; $14,500 in a Magnolia Federal Bank account; $4,000 in furniture; an automobile valued at $1,000; and a motorcycle valued at $700.

In 1994, Donald's net income exceeded $100,000. The testimony regarding his 1995 income shows that as of October 1995, he showed a loss with regard to his business and that there is a possibility that the business will continue to incur some losses. The chancellor below determined that the increase in Donald's income between 1983 and the time modification was sought constituted a substantial change in circumstances. In addition, the chancellor found that the costs of living have increased since 1983, which also constituted a substantial change in circumstances.

Donald Strub has retired from his job as an engineer at Packard, now receiving a pension. However, he has started additional employment, his own company. He has also ventured into the real estate business. So far, he has shown significant increases in income. However, when he turns sixty-two, Donald's pension will be decreased by about $815 per month.

The chancellor entered an order on October 31, 1995, modifying periodic alimony being paid by Donald. The chancellor increased Nina's alimony receipts from $200 per month to $950 per month,

effective from the date when Nina filed her motion for modification. The chancellor's order left a retroactive amount of $14,250 in alimony, which Donald was to pay Nina immediately. The $950 per month payments were to begin on November 1, 1995 and would be paid on the first day of each month thereafter until Donald reached sixty-two years of age. At that time, the alimony would reduce to $600 per month, to be paid until Nina remarried or either party died. All other provisions of the final divorce decree remained in effect. Donald now appeals to this Court, raising the following issues:

## I. WHETHER THE COURT MANIFESTLY ERRED OR ABUSED ITS DISCRETION IN INCREASING THE AMOUNT OF ALIMONY

## II. WHETHER THE COURT MANIFESTLY ERRED OR ABUSED ITS DISCRETION IN MAKING THE INCREASED ALIMONY PAYMENTS RETROACTIVE

### I. AMOUNT OF INCREASE IN ALIMONY

In the domestic arena, this Court does not disturb a chancellor's findings unless manifestly wrong or clearly erroneous, or if an erroneous legal standard was applied. *Setser v. Piazza*, 644 So.2d 1211, 1215 (Miss. 1994). *Hockaday v. Hockaday*, 644 So.2d 446, 448 (Miss. 1994). A modification of periodic alimony may be made by the chancery court when there has been a material change in circumstances arising subsequent to the original decree. *Hockaday*, 644 So.2d at 448; *Armstrong v. Armstrong*, 618 So.2d 1278, 1281 (Miss. 1993). The change must occur as a result of circumstances not reasonably anticipated at the time of the agreement. *Tingle v. Tingle*, 573 So.2d 1389, 1391 (Miss. 1990).

When making a determination concerning the modification of alimony, a court must take into consideration the factors found in *Brooks v. Brooks*, 652 So.2d 1113, 1122 (Miss. 1995), which include: income and expenses of the parties; health and earning capacity of the parties; needs of each party; obligations and assets of each party; age of the parties; standard of living of the parties, during marriage and at time of support determination; tax consequences of a spousal support order; and any other factors deemed by the court to be just and equitable in connection with the setting of the spousal support.

In determining whether an alimony award should be modified, this Court should consider the present status of the parties and inquire into their respective earning abilities, probable future prospects, and all other circumstances which might bear on the subject. *Spradling*, 362 So.2d 620, 623 (Miss. 1978) (citing Bunkley & Morse, AMIS DIVORCE AND SEPARATION IN MISSISSIPPI, § 6.11 (1957).

A chancellor should also consider a substantial increase in earnings by one party subsequent to the decree. *Spradling*, 362 So.2d at 623-24 (Miss. 1978). In *Spradling*, this Court noted that a wife should "have a right to the opportunity to prepare for old age, or even the possibility of [her husband] dying or becoming disabled." *Id.* at 624. "Generally a wife is entitled to periodic alimony when her income is insufficient to maintain her standard of living, and the husband is capable of paying." *Heigle v. Heigle*, 654 So.2d 895, 898 (Miss. 1995).

This Court has also found that financial difficulties of a closely held corporation, of which a former husband was a major shareholder, did not result in sufficient change of circumstances to warrant

downward modification of the former husband's $2,000 per month alimony obligation. *Geiger v. Geiger*, 530 So.2d 185, 187 (Miss. 1988). *See also* **Banks v. Banks**, 511 So.2d 933 (Miss. 1987) (upholding increase of alimony obligation when wife's house payments increased, home required repairs, and health deteriorated).

The facts here do not indicate that the chancellor abrogated any guidelines in modifying alimony obligations when she ordered Donald to pay Nina $950 per month until he reached sixty-two, and $600 per month afterward. Donald's decrease in business income for the year 1995 is the result of Donald's decision to start his own business. That he may suffer losses in the future due to the potential losses in his business should not *per se* preclude an increase in his alimony obligations, since he made the decision to make a risky investment with his ample funds. *Cf.* **Varner v. Varner**, 666 So.2d 493, 496 (Miss. 1995)(finding that no material change in circumstances occurred requiring decrease in alimony obligations because decrease in income was related to husband's decision to open a solo practice and give up supplemental income). Nonetheless, at the time of modification, Mr. Strub appeared financially able to make the increased alimony payments. His own testimony showed that the value of his total assets at the time of modification exceeded $400,000. Adding to that the value of his business, Donald Strub, at the time of modification, was in a good position to sustain the increase in alimony payments.

In practical effect, Donald would only have to pay the $950 monthly alimony for one year ($11,400), since he was sixty-one years old at the time of the modification. The $600 monthly alimony thereafter is equitable in light of both parties' financial situations. The burden upon Donald is not overly great to pay the increased alimony, and there is no great disparity between his standard of living and Nina's standard of living as a result of the increase. *Compare* **Hockaday**, 644 So.2d at 450 (affirming chancellor's decision not to permanently reduce or terminate periodic alimony when husband remained in better financial position than wife) *with* **Brooks** 652 So.2d at 1124 (reversing award of periodic alimony to wife when it exceeded husband's income because chancellor's award was not equitable and fair). On this point, we do not hold the chancellor in error.

## II. RETROACTIVITY OF ALIMONY PAYMENTS

This Court has never explicitly noted that alimony increases may relate back to the date of the filing for modification. However, we have noted, with approval, the possibility of allowing alimony reductions to relate back to the date of the filing. *See* **Cumberland v. Cumberland**, 564 So.2d 839, 847, footnote 5 (Miss. 1990). This Court did, in one case, refuse to allow a modification to relate back to the date of filing, but did allow partial retroactivity. **Setser**, 644 So.2d at 1215.

No manifest error was made here by making the payments retroactive to the date of the filing of the petition, because looking at Donald Strub's financial condition at the time of modification, he was still in a position to pay the retroactive portion comfortably. This retroactive amount is further necessary to compensate Nina Strub for the $520 monthly shortfall she experienced during the modification proceedings. Incidentally, even with the payment of alimony at $600, Nina Strub may still not "break even" each month, if the retroactive alimony payments do not put her in a fair and equitable position. To that end, the retroactive payment is even more appropriate. Retroactivity is allowed in child support cases and is proper here. This point of error is also denied.

## CONCLUSION

Because both Donald's and Nina Strub's financial conditions at the time of modification constituted a change in circumstances, the chancellor was correct in increasing the amount of alimony Donald is required to pay to Nina. The chancellor did not err in setting the payments at $950 per month until Donald turned sixty-two, and $600 thereafter; and, the chancellor did not err in making the $950 per month alimony retroactive to the date of the filing of the petition. Therefore, we affirm the chancellor's decision.

JUDGMENT IS AFFIRMED.

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**