# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CT-00532-SCT

*SUSAN HARRIS*

*v.*

*THOMAS L. HARRIS*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 03/16/2016 |
| TRIAL JUDGE: | HON. H. DAVID CLARK, II |
| TRIAL COURT ATTORNEYS: | THOMAS L. TULLOS |
| | WILLIAM B. JACOB |
| COURT FROM WHICH APPEALED: | NEWTON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | THOMAS L. TULLOS |
| ATTORNEYS FOR APPELLEE: | WILLIAM B. JACOB |
| | JOSEPH A. KIERONSKI, JR. |
| | DANIEL P. SELF, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 02/01/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     Thomas Leon Harris sought a reduction in the alimony award he paid to Susan Harris, due to the Social Security benefits she was receiving that were based on his income. After review of the applicable law in Mississippi and in other states, we overrule *Spalding v. Spalding*, 691 So. 2d 435 (Miss. 1997), to the extent that it holds an alimony reduction to be automatic for Social Security benefits derived from the alimony-paying spouse's income. Further, we fully reverse the judgment of the Court of Appeals and remand for the trial court

to perform the proper analysis under *Armstrong v. Armstrong*, 618 So. 2d 1278 (Miss. 1993), and our alimony-modification caselaw in light of the instant holding.

## STATEMENT OF THE FACTS

¶2. Susan Harris (Susan) and Thomas Leon Harris (Leon) were married on July 14, 1979. On the grounds of irreconcilable differences, they were divorced on February 25, 2011. At the time of divorce, Leon was sixty-one years old, and Susan was sixty years old. In the Property Settlement Agreement, Leon agreed to pay $2,755 per month to Susan as periodic alimony. The Property Settlement Agreement did not address any contingency with respect to the alimony other than that it would end at Susan's remarriage or death. After the divorce, when Susan became eligible for Social Security, she filed for and obtained derivative Social Security retirement benefits in the amount of $1,035 per month, based on Leon's income record with the Social Security Administration.

¶3. In 2015, Susan filed a complaint to review the health provision of the Property Settlement Agreement. Leon answered, filing a Motion to Dismiss Susan's complaint under Mississippi Rule of Civil Procedure 12(b)(6), and he filed a counterclaim to reduce or terminate his alimony payments in light of the fact that Susan had begun drawing Social Security benefits based on his earnings record. Leon maintained that he should be required to pay Susan only an additional $1,720 per month, since she was already drawing $1,035 per month from Social Security as a result of his earnings record.

¶4. The trial court granted Leon's Rule 12(b)(6) Motion to Dismiss, and the trial court entered a judgment modifying the Property Settlement Agreement by lowering Leon's

2

alimony payments from $2,755 to $1,720 a month, stating, without explanation, that there had been a material change in circumstances. Susan appealed on the sole issue of the trial court's modification of the Property Settlement Agreement. The Court of Appeals affirmed the trial court's decision, holding that a material change in circumstances need not be shown and assessing all costs of the appeal to Susan. Susan sought rehearing, which was denied, but we granted certiorari.

## STATEMENT OF THE ISSUES

¶5.     Certiorari was granted on two issues. Stated verbatim, the two issues are:

(1)     The lower court erred when it granted Leon credit for the Social Security benefits received by Susan.

(2)     The chancellor erred when he modified the Agreed Property Settlement Agreement.

For clarity, we have restated the issues:

**(1)     Whether the Social Security benefits received by Susan based on Leon's income constituted an automatic downward modification in the alimony granted in the Property Settlement Agreement.**

**(2)     Whether a material change in circumstances warranted a downward modification in the alimony granted in the Property Settlement Agreement.**

## STANDARD OF REVIEW

¶6.     The standard of review of an alimony award is well-settled. "Alimony awards are within the discretion of the chancellor, and his discretion will not be reversed on appeal unless the chancellor was manifestly in error in his finding of fact and abused his discretion."

***Armstrong v. Armstrong***, 618 So. 2d 1278, 1280 (Miss. 1993) (internal citation omitted).

3

However, if we hold the "chancellor's decision manifestly wrong, or that the court applied an erroneous legal standard, we will not hesitate to reverse." *Id.*

**ANALYSIS**

**(1)** **Whether the Social Security benefits received by Susan based on Leon's income constituted an automatic downward modification in the alimony granted in the Property Settlement Agreement.**

¶7.    On certiorari, Leon maintains that the credit he received for the Social Security benefits was not a modification of the alimony provision because Susan still received the same amount of alimony ($2,755) between his payment and her Social Security benefits. Therefore, a material change in circumstances was never needed.  On the other hand, Susan argues that holding an alimony credit to be automatic for Social Security benefits claimed and paid to the dependent spouse is a "complete break" from the requirement that a  material change in circumstances is  required.

¶8.    "The purpose of permanent periodic alimony is to be a  substitute  for the marital-support obligation." *Rogillio v. Rogillio*, 57 So. 3d 1246, 1250 (Miss. 2011). The award of permanent periodic alimony arises from the duty of the financially independent spouse to support the financially dependent spouse.  *Id.*  "The rule of law providing for the modification of periodic alimony awards arises from the nature of alimony itself, which is based upon the inherently changing financial ability of the [financially independent spouse] to support [the financially dependent spouse] in the manner to which [he or she]  is accustomed." *McDonald v. McDonald*, 683 So. 2d 929, 931 (Miss. 1996).  In Mississippi, in determining whether to modify an alimony award, the trial court should "consider the

4

present status of the parties . . . ." *Spradling v. Spradling*, 362 So. 2d 620, 623 (Miss. 1978); see also *Ivison v. Ivison*, 762 So. 2d 329, 334 (Miss. 2000) (holding that the material change in circumstances of one or both parties must be shown). Further, the Court found reversible error where the trial court failed to consider the substantial increase in earnings of the appellee who sought the modification in alimony. *Spradling*, 362 So. 2d at 623. Also, the change in circumstances must be due to an after-arising circumstance that was not anticipated by the parties at the time of the original decree. *Tingle v. Tingle*, 573 So. 2d 1389, 1391 (Miss. 1990); *see also* *Holcombe v. Holcombe*, 813 So. 2d 700, 703 (Miss. 2002).

¶9. As stated above, the Court of Appeals held that a material change in circumstances was not needed to amend the Property Settlement Agreement. It cited *Spalding v. Spalding*, 691 So. 2d 435, 439 (Miss. 1997), stating that the "chancellor did not abuse his discretion in failing to require Leon to show a material change in circumstances because Leon's obligation to pay alimony in the amount set forth in the Agreement remains the same." *Harris v. Harris*, 2017 WL 2129752, at ¶ 10 (Miss. Ct. App. May 16, 2017), *reh'g denied* (Aug. 22, 2017), *cert. granted*, 2017 WL 2129752 (Miss. Nov. 16, 2017).

¶10. The question before us comes down to whether the *Spalding* Court created an exception, as argued by Leon, in which a material change in circumstances is not needed to amend the Property Settlement Agreement with regard to alimony when Social Security benefits are received based upon the independent spouse's income. The issue in *Spalding* was one of first impression in Mississippi, and it asked the Court to determine whether William Spalding was entitled to a credit in the amount of alimony he paid to Betty Spalding

5

because she had begun to claim *her* Social Security benefits based on his income. *Spalding*, 691 So. 2d at 436-37. The Court held that William should be credited for the amount Betty received because the amount was based on his income. *Id.* at 439. The *Spalding* Court did not consider whether the benefits constituted an unforeseeable and material change in circumstances. It merely concluded that "no valid reason exists to treat derivative Social Security benefits differently with respect to alimony or child support." *Spalding*, 691 So. 2d at 439. The *Spalding* Court based its decision on two cases: *Mooneyham v. Mooneyham*, 420 So. 2d 1072 (Miss. 1982), and *Frazier v. Frazier*, 455 So. 2d 883 (Ala. Civ. App. 1984).

¶11. The *Mooneyham* Court concluded that Social Security disability benefits—based on the noncustodial parent's disability—that are paid to the child should be credited to the non-custodial parent's support obligations. *Mooneyham*, 420 So. 2d at 1074. Notably, the Social Security disability benefits were paid due to the noncustodial parent's inability to work, and the noncustodial parent received no additional Social Security benefits, aside from the benefits used to cover child support. *Id.*

¶12. Under 42 U.S.C.A. § 402, once a divorced spouse reaches the age of sixty-two, he or she is entitled to Social Security benefits that are "equal to one-half of the primary insurance amount of her husband (or, in the case of a divorced wife, her former husband) for such month." 42 U.S.C.A. § 402(b)(2). Further, use of the former spouse's income to receive benefits does not affect that former spouse's benefits. The applicable statute provides:

> (C) When any of such individuals is entitled to monthly benefits as a divorced spouse under section 402(b) or (c) of this title or as a surviving divorced spouse under section 402(e) or (f) of this title for any month, the benefit to which he or she is entitled on the basis of the wages and self-employment

6

income of such insured individual for such month shall be determined without regard to this subsection, and the benefits of all other individuals who are entitled for such month to monthly benefits under section 402 of this title on the wages and self-employment income of such insured individual shall be determined *as if no such divorced spouse or surviving divorced spouse were entitled to benefits for such month*.

42 U.S.C.A. § 403 (emphasis added). In other words, Leon's Social Security payments *are not affected by* Susan's use of his income to claim her Social Security benefits. Turning to ***Mooneyham***, the noncustodial parent's *only* Social Security benefits were being received by the child. If, for instance, Leon had received his Social Security benefits and sent them or assigned them to Susan, the instant case would be on point with ***Mooneyham***. However, ***Spalding*** and the instant case are materially distinguishable from ***Mooneyham***, and the ***Spalding*** Court's reliance on ***Mooneyham*** is misplaced.

¶13.    As stated above, the ***Spalding*** Court also relied on a decision from Alabama. *See* ***Frazier***, 455 So. 2d at 883. On an issue of first impression, the ***Frazier*** Court decided that an alimony credit should be received by the independent spouse, when the dependent spouse uses the independent spouse's income to claim Social Security benefits. We expound upon the basis for the ***Frazier*** Court's holding below.

¶14.    First, like the ***Spalding*** Court, the ***Frazier*** Court considered Alabama caselaw that credited Social Security disability benefits to child-support obligations, as in ***Mooneyham***. ***Frazier***, 455 So. 2d at 883. And, as explained above, the credit received for Social Security disability benefits in child-support cases is materially different from the credit sought here. Therefore, the child-support cases are materially distinguishable from ***Frazier***, ***Spalding***, and the instant case.

7

¶15.    Second, it considered an Alabama case, *Swindle v. Swindle*, 429 So. 2d 601, 603 (Ala. Civ. App. 1983), in which a husband was bound by the couple's property settlement to pay the mortgage on the house, but the court held that his agreement was satisfied when, due to a fire, the insurance company paid the mortgage. The court reasoned that "[t]here was no evidence of any duty which had been imposed upon the husband to furnish such a fire policy." *Id.* And the court concluded, "It makes no difference that the mortgage was satisfied by the insurance payment from the policy so furnished by the husband for, under the circumstances, payment by the insurer to the mortgagee was the legal equivalent of the husband's satisfaction of that debt." *Id.*

¶16.    As with the Social Security disability benefits credited for child support, the husband in *Swindle* did not receive additional insurance payments, other than the insurance payments used to pay the mortgage. Further, the insurance payments were due to the husband's attainment and maintainence of the insurance policy. However, in the case of an alimony credit for Social Security benefits, the Social Security benefits belong to the dependent spouse, and although the amount is derived from the other spouse's income, the other spouse's Social Security benefits are not affected.

¶17.    Finally, *Frazier* considered a Georgia case, *Horton v. Horton*, 132 S.E.2d 200 (Ga. 1963), stating, "It has been decided that, inasmuch as the amount of alimony required to be paid is determined somewhat by income, Social Security benefits should be credited in discharging an obligation to pay periodic alimony." *Id.* at 885. However, the issue in *Horton* was the calculation of alimony and that calculation *included child-support payments*.

*Horton*, 132 S.E.2d at 200-201. More specifically, the court decided that the husband's Social Security disability benefits would be credited toward the child-support obligation. *Id.* at 201. Therefore, ***Horton*** is directly in line with ***Mooneyham*** and is materially distinguishable from ***Frazier***, ***Spalding***, and the instant case. Thus, considering the analysis of the ***Frazier*** Court, the ***Spalding*** Court's reliance on ***Frazier*** also is misplaced.

¶18. Further, Georgia subsequently spoke to our specific issue. *See **Bell v. Bell***, 356 S.E.2d 869, 869 (Ga. 1987). The ***Bell*** Court did not apply a credit to alimony benefits when the dependent spouse's Social Security benefits were derived from the independent spouse's income. ***Bell***, 356 S.E.2d at 869. The ***Bell*** Court's reasoning is instructive:

> A divorced wife is entitled, pursuant to 42 U.S.C.A. § 402(b)(1), to insurance benefits if she fulfills the requirements set forth in 42 U.S.C.A. § 402. Thus, under federal law the insurance benefits belong to the appellee. We have recognized that a wife's "efforts toward the furtherance of her husband's career [contribute] to the accumulation of . . . retirement benefits, and that [the] efforts [are] made with the expectation that [the] retirement benefits [will] provide her with some measure of personal security and future well-being." ***Courtney v. Courtney***, 256 Ga. 97, 99, 344 S.E.2d 421 (1986).

*Id.* Like Georgia, other states, such as South Carolina, Tennessee, and West Virginia, require a showing of a material or substantial change in circumstances to modify alimony due to the start of Social Security benefits. ***Serowski v. Serowski***, 672 S.E.2d 589, 593 (S.C. Ct. App. 2009) (requiring a substantial change in circumstances); ***Harris v. Harris***, 2004 WL 2607541, at *5 (Tenn. Ct. App. Nov. 16, 2004) (requiring an *unforseen* material change in circumstances); ***Phillips v. Phillips***, 403 S.E.2d 744 (W. Va. 1991) (requiring a substantial change in circumstances).

¶19. Today, we hold that Mississippi falls in line with these jurisdictions. Social Security benefits derived from the other spouse's income *do not* constitute a special circumstance triggering an automatic reduction in alimony. When a spouse receives Social Security benefits derived from the other spouse's income, the trial court must weigh all the circumstances of both parties and find that an unforseen material change in circumstances occurred to modify alimony. *See **Ivison***, 762 So. 2d at 334 (holding that the circumstances of both parties are considered to determine whether there was a material change); *see also* ***Tingle***, 573 So. 2d 1389, 1391 (Miss. 1990) (holding that change in circumstances must be after-arising and unanticipated). To the extent that ***Spalding*** states otherwise, it is overruled.

**(2)     Whether a material change in circumstances warranted a downward modification in the alimony granted in the Property Settlement Agreement.**

¶20. Leon certainly may be entitled to a reduction in alimony, but it is not an automatic reduction due to Susan's Social Security benefits based on his income. The trial court is required to consider the ***Armstrong*** factors in its finding when it modifies a periodic alimony award. ***Armstrong v. Armstrong***, 618 So. 2d 1278, 1280 (Miss. 1993); *see also **Steiner v. Steiner***, 788 So. 2d 771, 776 (Miss. 2001) ("The chancellor must consider what has become known as the ***Armstrong*** factors in . . . deciding whether to modify periodic alimony, comparing the relative positions of the parties at the time of the request for modification in relation to their positions at the time of the divorce decree."). The trial court also must consider the financial positions of both parties and whether the change in circumstances was due to an after-arising circumstance that was not anticipated by the parties at the time of the

original decree. *See Ivison*, 762 So. 2d at 334; *Tingle*, 573 So. 2d at 1391; *Spradling*, 362 So. 2d at 623.

¶21. Although the trial court was following the law under *Spalding*, because we overrule *Spalding* to the extent that it holds an alimony reduction to be automatic for Social Security benefits derived from the alimony-paying spouse's income, we hold the trial court's failure to consider the *Armstrong* factors, the financial positions of both parties, and the foreseeabliltiy of Social Security payments to be reversible error. Thus, we reverse the judgment of the Court of Appeals, including the assessment of costs on appeal, and we remand the case to the trial court to perform the proper analysis in light of our clarification that no automatic reduction in alimony is triggered by Social Security benefits derived from the alimony-paying spouse's income. To be clear, the instant holding separates Social Security benefits that affect alimony from Social Security benefits that affect child support, and the caselaw regarding Social Security benefits that affect child support is not changed by this holding.

¶22. **REVERSED AND REMANDED.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR. ISHEE, J., NOT PARTICIPATING.**