# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CA-00192-SCT

*DRAKE L. LEWIS*

*v.*

*TONIA D. LEWIS PAGEL*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/08/2016 |
| TRIAL JUDGE: | HON. CARTER O. BISE |
| TRIAL COURT ATTORNEYS: | THOMAS WRIGHT TEEL |
| | DEAN HOLLEMAN |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | THOMAS W. TEEL |
| ATTORNEY FOR APPELLEE: | DEAN HOLLEMAN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 06/01/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., KITCHENS AND CHAMBERLIN, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     Tonia (Lewis) Pagel ("Tonia") filed for divorce against Drake Lewis ("Drake") in the Harrison County Chancery Court, Second Judicial District.  An order of divorce was entered in 2008.  This case is now on its third appeal to this Court.

¶2.     Drake filed his first appeal from the order of divorce. *Lewis v. Lewis*, 54 So. 3d 233, 239 (Miss. Ct. App. 2009) (*Lewis I*) (remanding with instructions for valuing the marital estate).  On certiorari, this Court affirmed in part and reversed in part, remanding the case to the chancery court. *Lewis v. Lewis*, 54 So. 3d 216, 218 (Miss. 2011) (*Lewis II*) (finding that "the chancellor should value Legacy1[, a marital business,] without considering

goodwill"). After remand, the chancellor issued his judgment and an order on modification and contempt. Drake filed his second appeal from the judgment and the order. ***Lewis v. Pagel***, 172 So. 3d 162, 177 (Miss. 2015) (***Lewis III***) (remanding on issue of child support).

¶3. Now, Drake appeals two issues. First, Drake argues that the order of divorce should be voided due to a lack of jurisdiction and that the chancellor erred in finding that he resided in Harrison County. Drake claims that he never resided in Harrison County and that it was an improper venue for the suit. Second, Drake argues that the chancellor erred in entering an order of contempt against him. Finding no error, we affirm the judgment of the chancellor on both issues.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶4. Drake and Tonia were married in 1991. Tonia filed for divorce in August 2006 in Harrison County Chancery Court, Second Judicial District; an order of divorce was entered on January 11, 2008.

### *Jurisdiction Facts*

¶5. On September 22, 2014, at a hearing on a contempt motion filed by Tonia, while the second appeal was pending before this Court, Drake filed a motion for a continuance and argued for the first time in the litigation that the divorce action was void for lack of jurisdiction due to improper venue under Mississippi Code Section 93-5-11. The chancellor granted the motion for continuance, and Drake filed a *Motion to Declare Prior Orders Void and to Dismiss Actions*. Drake's counsel claimed that he first became aware of the lack of

2

jurisdiction on September 22, 2014, when he and Drake were discussing the facts related to the contempt motion.

¶6. In his filing, Drake argued that he and Tonia both resided in Jackson County at the time of their separation and when Tonia filed for divorce in Harrison County. He also noted that he was served in Jackson County. In an affidavit, Drake recognized that Tonia's complaint for divorce alleged that he resided at "Gulf Shores Villa, Atkinson Road, in Biloxi, Mississippi." He argued, though, that this was the address of his aunt's condominium and that he had never resided there. Further, he argued, after his separation from Tonia, he resided at his business address in Jackson County. While he conceded that he "spent some nights away from Jackson County," he claimed that he was a resident of the county from the time of separation through the entry of the divorce order in 2008 until he moved to Louisiana in 2009.

¶7. As evidence of his residence in Jackson County, Drake noted that his Mississippi driver's license was issued in Jackson County from 2004 until 2008. He also pointed out that his business office—which he argued he used as a primary residence—was in Jackson County. Further, according to Drake, he was registered to vote in Jackson County from 1996 to 2011. Lastly, he claimed that his mail, during this time period, was delivered either to his marital residence or his business—both in Jackson County.

¶8. In her response to Drake's motion, Tonia argued that Drake left the marital residence on June 12, 2006, and moved to Biloxi, Mississippi, in Harrison County after their

3

separation.[1] She noted that Drake did not answer her complaint that alleged that he resided in Harrison County. Tonia also claimed that Drake, on his Rule 8.05 financial disclosure statement, filed on September 29, 2006, represented to the chancery court—in his own handwriting—that his address was in Biloxi, Mississippi. *See* Miss. Unif. Chancery Court R. 8.05. In response, Drake noted that he spent ten to fourteen nights at the Biloxi address and put the address there "probably because he had stayed there when he drafted it." Further, Tonia noted that Drake admitted in a 2007 deposition that he lived in Biloxi:

> Q.    And where did you live prior to January of '07?
>
> A.    I lived in Biloxi at an apartment.
>
> Q.    And when is the last time you lived at Marina Road or Marina Drive, where the home is?
>
> A.    June of '06.

In her affidavit, Tonia claimed that "[d]uring his scheduled visitations, I brought the children to him at th[e Harrison County] residence where they remained with him for the weekend." Tonia also cited her unrefuted trial testimony:

> Q.    And at the time -- so the record will be clear, at the time you filed your complaint for divorce in the Second Judicial District, that is where Drake was living, correct?
>
> A.    Yes.

¶9.    At the hearing, on October 6, 2014, Drake explained his living situation:

> Immediately after the separation, I spent my time divided between my aunt's. My aunt had a one-bedroom apartment in Biloxi, and I spent some nights there

---

[1] The entire city of Biloxi, Mississippi, rests within the Second Judicial District of Harrison County.

4

and some nights at my office in Gautier [in Jackson County], and then some of the time at Stephanie's home in Jackson County in Ocean Springs.

Drake also claimed that his residence remained the marital home since he paid the mortgage on the property, and he claimed, "I spent, as I said before, about equal times, probably more in Gautier at my office than anywhere else." Drake testified that since 2005 he had never had any voting privileges, homestead rights, or residences in Harrison County. Tonia testified that she never delivered the children to the office for any weekend visitation. She also claimed that Drake had told her that he was going to "stay" at his aunt's apartment; when asked again, Tonia claimed that Drake had said he "was going to live there."

¶10. After the hearing, the chancellor denied the motion. The chancellor found that Drake "left the marital home in June of 2006, . . . moved to Biloxi, Mississippi, Second Judicial District of Harrison County, Mississippi [and] . . . took up residence in his aunt's condominium." Further, the chancellor noted that Drake's Rule 8.05 disclosure listed his mortgage on the marital home as his "previous household." The chancellor wrote,

> This Court is well aware that this is a factual determination that it made based upon the evidence presented to it, under oath, at the initial trial of this matter. Propriety of venue was established by the testimony at the first trial. No objection to venue was made at the trial. No objection to venue was raised in the first appeal. No objection to venue was made at the retrial of this matter. No issue of venue was raised in the second appeal.
>
> . . .
>
> Again, there is the question of credibility. For Drake Lewis to now claim after having affirmatively led this Court to find that it had proper venue because he never resided in Biloxi is unbelievable. He left Tonia Lewis and Jackson County in June of 2006 and moved to Biloxi, and remained there until he moved in with his paramour in Ocean Springs, Jackson County, Mississippi in January 2007.

5

The chancellor found that Drake's motion was frivolous and awarded attorney's fees to Tonia.

¶11. In response, Drake filed a petition for interlocutory appeal with this Court. This Court denied Drake's petition on December 10, 2014. On February 18, 2016, Drake entered into three agreed orders that the Harrison County Chancery Court had subject-matter jurisdiction over the divorce action.

*Contempt Facts*

¶12. On May 19, 2015, the chancellor granted Tonia's motion for contempt and entered a judgment of contempt against Drake. The chancellor found that it had jurisdiction to enter the judgment of contempt as Drake was not entitled to a stay of the proceedings while he awaited resolution of his petition for interlocutory appeal. The chancellor recognized the implications of lacking jurisdiction and stayed entry of the judgment until the resolution of the jurisdictional issue in the petition for interlocutory appeal.

¶13. Tonia sought a total contempt award of $306,176.82. Of that award, $132,812 was due to Tonia as a portion of the equitable distribution of assets in the divorce decree entered in 2008. *See Lewis III*, 172 So. 3d at 173–74. Tonia sought $5,000 in attorney's fees and $60,000 in lump-sum alimony that the chancellor had awarded her on February 15, 2013. *See id.* at 175–76. She also sought $2,353.50 for one of the children's orthodontic expenses.

¶14. In analyzing Drake's ability to pay, the chancellor recognized that Drake and his current wife's totaled income for 2013 was $89,970. The chancellor noted that Drake's wife's income "was not to be considered in establishing any obligation for [Drake]" but

6

realized that the "combined income demonstrat[ed] what the current household income" was. Addressing Drake's "true financial means," the chancellor noted that if Drake chose to do so he could sell his collector Chevrolet Corvette, various properties and an interest in an apartment complex. In addition, the chancellor recognized that Drake had sold a property approximately one week before the contempt hearing and paid his father the proceeds of $45,000.

¶15. Throughout the order, the chancellor emphasized the role of Drake's father in Drake's finances. He recognized that the debts Drake claimed to owe his father were "not truly debts owed by [Drake] to his father," as his father was willing to forgive the debts in offers of settlement to Tonia. The chancellor also found that Drake "attempted to shield his assets and dodge obligations by moving properties into his father's name."

¶16. As evidence of the father's involvement in Drake's finances, the chancellor noted that the father paid for Drake's legal education, the note on the house that Drake lived in after obtaining his law degree and several notes on Drake's other properties. Meanwhile, the chancellor recognized that Drake's income had not increased despite his graduation from law school; eight years after the filing of divorce Drake still earned the same approximate salary of $55,000 from his father's business. Further, the chancellor found two mortgages that Drake alleged to owe to his father to be "a sham." The chancellor noted that the mortgages lacked accompanying promissory notes. This is despite the fact that the chancellor left the hearing record open for a day to allow Drake to enter into evidence the promissory notes for the mortgages. In addition, the chancellor noted that the mortgages were entered into

7

between Drake and his father thirty-five days after the chancellor had denied Drake's motion for reconsideration of the chancellor's judgment after remand.

¶17. In light of his findings, the chancellor found that Drake's "actions constitute[d] willful and contumacious contempt." He found that Drake had the present ability to pay and simply refused to pay the judgment of contempt. In addition to Drake's present ability to pay, the chancellor also observed that Drake had the $132,812 in his possession when the distribution originally was ordered in the 2008 divorce decree. Further, the chancellor recognized that Drake's offers of settlement "included no offer to pay [Tonia] any cash . . . only . . . real property, some of which carried mortgages."

¶18. The chancellor entered the judgment of contempt against Drake in the amount of $197,812 with interest on the judgment set at 2.5 percent. As part of the judgment, the chancellor awarded Tonia attorney's fees but specifically excluded any recovery for the time Tonia's counsel spent defending Drake's venue objection. He also set the purge amount at $25,000. After the ruling, Tonia filed a motion under Mississippi Rule of Civil Procedure 59, arguing that the chancellor's stay of the May 2015 judgment was in error as Drake's interlocutory petition had been denied by this Court in 2014. Tonia requested that the chancellor reconsider the contempt judgment and incarcerate Drake "until he purge[d] himself of the full amount owed to Tonia."

¶19. On January 5, 2016, the chancellor held a hearing on Tonia's Rule 59 motion. On January 11, 2016, the chancellor recognized that this Court had denied Drake's interlocutory petition on December 10, 2014. The chancellor further ordered the parties to set a date to

hear the child-support issue that this Court had remanded in August 2015 in its resolution of the second appeal. *See Lewis III*, 172 So. 3d at 177. The chancellor also ordered Drake to pay the purge amount of $25,000 pursuant to the May 2015 judgment on the date of the hearing on child support. Also, the chancellor ordered Drake to pay Tonia an additional $2,000 in attorney's fees.

¶20. The hearing on child support was set for February 18, 2016. On February 1, 2016, Tonia filed for contempt for support due to her since the May 2015 judgment. Drake filed his notice of appeal on February 4, 2016. According to the notice, Drake appeals from the judgment on January 11, 2016.

¶21. After the filing of the notice of appeal, the parties entered three agreed orders on February 18, 2016. The first order recognized that Drake had tendered a check for $35,509.48 to the chancery court clerk and directed the clerk to disburse the funds to Tonia. The order also noted that Drake was paying Tonia the purge amount and attorney's fee judgment of January 11, 2016, with the remaining amount to be credited toward the May 19, 2015, contempt judgment. The second order entered judgment against Drake for $30,000 for the lump-sum alimony owed between March 2015 and February 2016 and for $1,564.32 for attorney's fees that were ordered as a result of Drake's 2014 venue objection. This second order reserved ruling on the issue of contempt in relation to these amounts owed by Drake. The third order merely recognized that Drake had tendered payment of $35,509.48 to the chancery court clerk to be disbursed to Tonia.

9

**STANDARD OF REVIEW**

¶22. "This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *White v. White*, 26 So. 3d 342, 346 (Miss. 2010) (quoting *R.K. v. J.K.*, 946 So. 2d 764, 772 (Miss. 2007)). Further, we "will not reverse a Chancery Court's findings . . . where there is substantial evidence supporting those findings." *Madden v. Rhodes*, 626 So. 2d 608, 616 (Miss. 1993). We also recognize that the chancellor "being the only one to hear the testimony of witnesses and observe their demeanor, is to judge their credibility. He is best able to determine the veracity of their testimony, and this Court will not undermine the chancellor's authority by replacing his judgment with its own." *Id*. "For questions of law, we employ a de novo standard of review and will only reverse for an erroneous interpretation or application of the law." *Boyd v. Tishomingo Cty. Democratic Exec. Comm.*, 912 So. 2d 124, 128 (Miss. 2005) (citing *In re Mun. Boundaries of City of Southaven*, 864 So. 2d 912, 917 (Miss. 2003)).

**ANALYSIS**

**I.      Jurisdiction Findings**

¶23. The chancellor found that Harrison County was the proper venue for the divorce, as Drake resided in Harrison County at the time Tonia filed the divorce petition. Substantial evidence from the record supports this finding.

¶24. Venue over a contested divorce proceeding is governed by Mississippi Code Section 93-5-11, which provides in relevant part:

10

. . . If the defendant be a resident of this state, the complaint shall be filed in the county in which such defendant resides or may be found at the time, or in the county of the residence of the parties at the time of separation, if the plaintiff be still a resident of such county when the suit is instituted.

Miss. Code Ann. § 93-5-11 (Rev. 2013). We recognize that "that the word 'residence' as used in divorce statutes is synonymous with 'domicile.'" ***Dunn v. Dunn***, 577 So. 2d 378, 380 (Miss. 1991) (citing ***Bilbo v. Bilbo***, 180 Miss. 536, 546, 177 So. 772, 775 (1938)). Domicile requires (1) an actual residence and (2) "the bona fide intention of remaining there, if not permanently, at least indefinitely." ***Smith v. Smith***, 194 Miss. 431, 12 So. 2d 428, 429 (1943). "The foundation of domicile is intent." ***Stubbs v. Stubbs***, 211 So. 2d 821, 825 (Miss. 1968). "'[A]s a domicile may be acquired by a longer or shorter residence, depending upon the circumstances of the case, its true basis and foundation must be the intention, the *quo animo* of evidence.'" ***Hale v. State Democratic Exec. Comm***., 168 So. 3d 946, 952 (Miss. 2015) (quoting ***Hairston v. Hairston***, 27 Miss. 704, 719 (1854)) (emphasis in original).

¶25. Here, Drake listed his address on his initial 8.05 statement as Harrison County. He also listed his mortgage payment on the marital home as his "previous household." Also, Drake testified in an 2007 deposition that he lived in Harrison County before January of 2007. Further, Drake's residence was established at trial by Tonia's unrefuted testimony. In addition, Tonia testified that when Drake left the marital home in Jackson County, he packed his truck with his belongings and left to live at his aunt's condominium in Harrison County. Drake also often would keep the children on weekend visitations at the condominium.

11

¶26.  It is clear throughout the divorce proceedings that the chancellor did not find Drake to be a credible witness.  In his order denying Drake's motion to dismiss, the chancellor wrote, "Again, there is the question of credibility.  For Drake Lewis to now claim after having affirmatively led this Court to find that it had proper venue because he never resided in Biloxi is unbelievable."  *See also* **Lewis I**, 54 So. 3d at 235 ("[T]he chancery court noted that it had 'the opportunity to observe the demeanor of the witnesses, and to judge their credibility[, and] that [Drake] is not a credible witness.  He made efforts to hide assets and income.'").  All of this evidence supports the chancellor's finding that Drake was domiciled in Harrison County.

¶27.  Although Drake disagrees with the chancellor's finding and interpretation of the evidence, we give deference to a chancellor's finding that is supported by substantial evidence.  The chancellor is in the best position to judge the credibility of the witnesses, and here the chancellor found Drake not credible.  Also, while Drake did not update his Jackson County driver's license or voter's registration during the time he resided in Harrison County, a finding of domicile depends on the facts and circumstances of each case.  Here, substantial evidence supports the chancellor's finding that Drake resided in Harrison County with the intention to remain there when the divorce was filed.

## II.     Waiver

¶28.  In addition to residing in Harrison County, Drake waived his objection to improper venue by not timely raising it.  Under Mississippi law, it is a "basic premise that venue may be waived."  **Belk v. State Dep't of Pub. Welfare**, 473 So. 2d 447, 451 (Miss. 1985).

¶29. Section 159 of the Mississippi Constitution vests subject-matter jurisdiction in the chancery courts over divorce proceedings. Miss. Const. art. 6, § 159. Personal jurisdiction in a divorce proceeding, though, is governed by Mississippi Code Section 93-5-11. Section 93-5-11 was amended by the Legislature in 2005 to include new language on the transfer of venue: "Transfer of venue shall be governed by Rule 82(d) of the Mississippi Rules of Civil Procedure." Miss. Code Ann. § 93-5-11; *see also* 2005 Miss. Laws 448. Rule 82(d) of the Mississippi Rules of Civil Procedure provides:

> **(d) Improper Venue.** When an action is filed laying venue in the wrong county, the action shall not be dismissed, but the court, on timely motion, shall transfer the action to the court in which it might properly have been filed and the case shall proceed as though originally filed therein. The expenses of the transfer shall be borne by the plaintiff. The plaintiff shall have the right to select the court to which the action shall be transferred in the event the action might properly have been filed in more than one court.

M.R.C.P. 82 (emphasis in original). Further, the Rules provide the procedure for contesting improper venue. M.R.C.P. 12(b). We have not applied the language of Section 93-5-11 directly after its 2005 amendment.

¶30. We recognize that before the 2005 amendment this Court consistently found that Section 93-5-11 could not be waived as it vested subject-matter jurisdiction over divorce actions in the chancery courts. *See Cruse v. Cruse*, 202 Miss. 497, 499, 32 So. 2d 355, 355 (1947) (applying Section 2738); *Price v. Price*, 202 Miss. 268, 272, 32 So. 2d 124,125 (1947) (applying Section 2738); *Carter v. Carter*, 278 So. 2d 394, 396 (Miss. 1973) (applying Section 2738)[2]; *Miller v. Miller*, 323 So. 2d 533, 534 (Miss. 1975); *Stark v. Stark*,

_____

[2] Section 2738 of the Mississippi Code of 1942 is the statutory predecessor of Section 93-5-11.

13

755 So. 2d 31, 33 (Miss. Ct. App. 1999); *Slaughter v. Slaughter*, 869 So. 2d 386, 395 (Miss. 2004); *see also* **Bush v. Bush**, 903 So. 2d 700, 701 (Miss. 2005) (order granting and deciding merits of petition for interlocutory appeal).

¶31. Today, we overrule these past cases to the extent that they hold that Section 93-5-11 confers subject-matter jurisdiction on chancery courts.[3]  Subject-matter jurisdiction is conveyed by the Mississippi Constitution.  Section 93-5-11 governs the venue of a divorce action and limits the chancery court's exercise of personal jurisdiction over the defendant. The Mississippi Rules of Civil Procedure control the procedure to be utilized when venue is improper.

¶32. Additionally, even if the venue argument was correct, the appropriate remedy would have been transfer of the matter to Jackson County.  M.R.C.P. 82(d).  Rule 82(d), explicitly incorporated by Section 93-5-11's amendment, allows the court to transfer an action only "on timely motion." *Id.*

¶33. Drake's motion challenging venue—eight years after the initial complaint—was untimely.  Tonia filed her complaint for divorce in 2006; the chancery court entered an order of divorce in 2008.  Drake first raised the issue of venue in 2014—six years after the entry of the judgment of divorce.

---

[3]In 2006—after Section 93-5-11 was amended—this Court, in dicta, found that Section 93-5-11's venue requirement conferred subject-matter jurisdiction on the chancery courts.  **National Heritage Realty, Inc. v. Estate of Boles**, 947 So. 2d 238, 248–49 (Miss. 2006) (applying Miss. Code Ann. § 91-7-63(1)).  We decline to follow this interpretation of Section 93-5-11 post-amendment.  It appears the **Boles** Court did not take the amendment into account.

¶34.	It is uncontested in the record that Drake did not answer Tonia's complaint for divorce. While Drake was not required to do so, he was permitted to do so under Mississippi Rule of Civil Procedure 81. M.R.C.P 81(d)(4); *see also* M.R.C.P. 12. Drake certainly could have responded to Tonia's complaint and challenged venue. Instead, Drake chose to litigate the entire divorce and several ancillary matters, including several appeals, before raising his venue objection once a contempt judgment appeared imminent.

¶35.	Our finding of waiver is reinforced by Drake's actions after filing this appeal. After Drake noticed this appeal—in which he raises the issue of a lack of subject-matter jurisdiction before this Court—he entered three agreed orders that were approved as to form by his counsel. Each order recognizes that the Harrison County Chancery Court has jurisdiction over both the subject matter of the dispute and the parties involved in the dispute.[4] Therefore, we find that Drake has waived his objection to venue by litigating in Harrison County.

### III.	Contempt

¶36.	We will not reverse the chancellor's finding of contempt unless the decision was manifestly wrong. *Lewis III*, 172 So. 3d at 178 (citing *Gutierrez v. Gutierrez*, 153 So. 3d 703, 713 (Miss. 2014)). "Contempt matters are committed to the substantial discretion of the trial court." *Gutierrez*, 153 So. 3d at 713.

¶37.	Civil contempt is meant to compel parties to obey orders of the court. *Jones v. Hargrove*, 516 So. 2d 1354, 1357 (Miss. 1987).

---

[4] It is noted that the approval of the orders is only as to "form." However, the orders are agreed (as opposed to contested) orders.

¶38. Civil contempt is meant to compel parties to obey orders of the court. *Jones v. Hargrove* A number of defenses are available to a party contesting contempt:

> [A] party can argue that his or her violation of the court's order was not willful or deliberate as to be labeled "contumacious." Another defense to civil contempt is the party's honest inability to perform according to the dictates of the order or decree. But the defendant has a duty to prove his inability with particularity and not in general terms.

*Gutierrez*, 153 So. 3d at 713 (internal citations omitted).

¶39. Here, the evidence supports the chancellor's decision to hold Drake in contempt.[5] Throughout the divorce proceedings and subsequent hearings, the chancellor found several times that Drake was not a credible witness. There is certainly the same implication within the order of contempt. The chancellor found that it appeared that Drake had attempted to shield his assets and dodge obligations. Further, the chancellor found it necessary to analyze Drake's "true financial means." The chancellor specifically found that Drake had the present ability to pay and had chosen not to do so. Drake owns a Chevrolet Corvette that has substantial value, several properties, and a one-fifth interest in an apartment complex that is valued at $135,000. He did not liquidate any of these assets in order to pay Tonia. He did, however, sell one of his properties a week before the contempt hearing and gave his father $45,000 of the proceeds. As further evidence of both Drake's current ability to pay the contempt and the chancellor's assessment of his credibility, Drake, facing incarceration, won the "jailhouse lottery" and tendered $35,509.48 to Tonia.

---

[5] Drake's appeal is procedurally proper. Tonia's argument that Drake should have appealed the May 2015 judgment of contempt instead of the January 2016 judgment is without merit since the January 2016 judgment was entered in response to Tonia's Rule 59 motion to amend the May 2015 judgment. *See* M.R.C.P. 59(e).

16

¶40. The chancellor also emphasized that Drake's father was heavily involved in Drake's finances. Drake's father paid for Drake's legal education, the mortgages on several of Drake's properties, and the mortgage on the house where Drake lived. Drake's father also employed Drake at the same salary despite Drake's advanced degree and collected rental management fees on several of Drake's properties. In addition, the chancellor also determined that two of the debts that Drake purportedly owed his father were not genuine debts.

¶41. Beyond these findings, the chancellor also recognized that Drake had the $132,000 when he was ordered to pay it to Tonia in 2008. Further, given the chancellor's determination that Drake had the present ability to pay, this finding is not necessary to affirm the chancellor's overall finding of contempt.

¶42. We also hold that Drake's offers of judgment to Tonia were ineffective to negate the judgment of contempt. Drake was ordered to pay Tonia cash. He never offered her cash, only a combination of real and personal property with much of the real property encumbered by mortgages. It was Drake's duty to convert enough assets into cash to pay Tonia; Tonia is not obligated under Mississippi law to accept an offer of judgment comprised of real property.

¶43. While we do not discourage future settlement negotiations between parties, an offer to settle a prior, court-ordered duty is by its very nature an offer to do something other than what the court ordered. As such, an adverse party is under no duty or obligation to accept the settlement.

¶44. Drake also argues that he does not have enough monthly income to pay the contempt judgment against him. As support, Drake notes that he was unable to make his monthly payments of $1,460 in child support or his lump-sum alimony payments of $2,500 to Tonia, which total $3,960. Drake notes that his monthly income, according to his Rule 8.05 financial statement, is $3,727.56.

¶45. Drake cites *Davis v. Davis*, 268 So. 2d 913, 915–16 (Miss. 1972), arguing that he should not be found in contempt, as he does not have enough income to meet the ordered obligations that comprise the contempt judgment. We find that Drake's reliance on *Davis* is misplaced. In *Davis*, this Court found that "[t]he proof that the husband only earned $550.00 per month was not contradicted" and that, after monthly support, the husband only had $85 of income left for his own expenses. *Id*. at 915.

¶46. Here, there is evidence that Drake's income is not limited to only his monthly salary. It is undisputed that Drake's father pays the mortgage on the house where Drake lives. Further, the chancellor found it necessary to analyze Drake's "true financial means" and questioned the extent of Drake's father's involvement in Drake's finances. Drake made no attempt to satisfy his obligations and has not liquidated any of his assets to pay Tonia. Also, while Drake's spouse has no duty to help Drake satisfy his obligations, his spouse does have a separate income with which she may contribute to the couple's joint domestic expenses. Lastly, this Court already has remanded this case on the issue of adjusting Drake's child-support obligations. *See Lewis III*, 172 So. 3d at 177–78. A hearing on reducing Drake's child support had not yet taken place as of Drake's appeal.

¶47. After a review of the record, we affirm the chancellor's judgment of contempt. The record contains sufficient evidence to support the chancellor's findings that Drake has the present ability to pay what he owes to Tonia and willfully chose not to do so.

## CONCLUSION

¶48. We affirm the chancellor's finding that Drake resided in Harrison County at the time of the filing of the divorce and find that Drake waived any objection to improper venue by litigating the divorce in Harrison County. We also affirm the judgment of contempt.

¶49. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR.**