## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CT-01075-SCT

*CINCINNATUS E. ALFORD, III*

*v.*

*LINDA B. ALFORD*

### ON WRIT OF CERTIORARI

DATE OF JUDGMENT:          06/27/2017
TRIAL JUDGE:               HON. VICKI R. BARNES
TRIAL COURT ATTORNEYS:     J. MACK VARNER
                           CLIFFORD C. WHITNEY III
                           S. TODD JEFFREYS
COURT FROM WHICH APPEALED: SHARKEY COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:    S. TODD JEFFREYS
ATTORNEYS FOR APPELLEE:    CLIFFORD C. WHITNEY III
                           J. MACK VARNER
NATURE OF THE CASE:        CIVIL - DOMESTIC RELATIONS
DISPOSITION:               THE JUDGMENT OF THE COURT OF
                           APPEALS IS AFFIRMED IN PART AND
                           REVERSED IN PART. THE ALIMONY
                           AWARD BY THE CHANCERY COURT OF
                           SHARKEY COUNTY IS REINSTATED AND
                           AFFIRMED - 06/04/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     In 2016, Linda Alford filed for divorce from Cincinnatus ("Nat") Alford III in the

Chancery Court of Sharkey County. The parties then agreed to a divorce based on

irreconcilable differences, allowing the chancery court to divide the marital assets and

expenses and to make a determination regarding alimony. The chancellor awarded Linda

Alford $5,000 per month in periodic alimony, $5,000 in attorney fees, and $6,000 in expert witness fees. Nat Alford appealed the chancellor's judgment. This Court assigned the case to the Court of Appeals, which reversed and remanded the chancellor's alimony award and reversed and rendered the amount of attorney fees. *Alford v. Alford*, No. 2017-CA-01075-COA, 2019 WL 3297142 (Miss. Ct. App. July 23, 2019).

¶2.     Aggrieved, Linda Alford filed a petition for writ of *certiorari* with this Court. We granted *certiorari* because this Court has not answered whether a chancellor should consider Social Security benefits when considering initial alimony awards. We find that consideration of derivative Social Security benefits should be reserved for alimony modification proceedings. Accordingly, we reverse the judgment of the Court of Appeals and reinstate the chancellor's award of alimony. We affirm the Court of Appeals decision to reverse and render the award of attorney fees.

**FACTS**

¶3.     On February 5, 2016, Linda Alford filed for divorce in the Chancery Court of Sharkey County. In January 2017, Linda Alford and Nat Alford agreed to an irreconcilable differences divorce and "stipulated that the chancellor would decide issues related to the equitable distribution of the marital estate, alimony, and attorney's fees." *Alford*, 2019 WL 3297142, at *1. Before trial, "the court entered an agreed temporary order that required Nat to pay Linda $4,000 per month in temporary support[.]" *Id.* At the time of the trial, both Linda Alford and Nat Alford were sixty-three years old.

2

¶4.      The chancellor divided the marital property and awarded Nat Alford 54 percent of the marital assets. The chancellor awarded Linda Alford 46 percent of the marital assets. After dividing the marital property, the chancellor determined there was a need for alimony and awarded Linda Alford $5,000 in periodic monthly alimony. The chancellor determined also that Linda Alford did not have the ability to pay all of her attorney fees and awarded her $5,000 in attorney fees and $6,000 in expert witness fees.

¶5.      Nat Alford argued on appeal that "the chancellor erred by (1) accepting Linda's valuation of his twenty-five percent interest in a closely held corporation that operates a farm in Sharkey County, (2) [by] awarding Linda $5,000 per month in periodic alimony, and (3) [by] awarding Linda attorney's fees and expert witness fees."[1] *Id.* Nat Alford presented three specific arguments regarding the alimony award. First, he contended that the chancellor had failed to consider the financial positions of the parties after equitable division. *Id.* at *5. Second, he argued that Linda Alford's expenses were inaccurate. *Id.* Finally, Nat Alford argued that the chancellor had failed to consider that Linda Alford was about to receive derivative Social Security benefits in the near future. *Id.*

¶6.      At the time of the Alfords' divorce, "a payor spouse [was] entitled to an automatic, dollar-for-dollar credit against his alimony obligation for derivative Social Security retirement benefits received by the payee spouse." *Id.* (citing *Spalding v. Spalding*, 691 So. 2d 435 (Miss. 1997), *overruled by Harris v. Harris*, 241 So. 3d 622, 628 (Miss. 2018)). After

_____

[1]In her petition for writ of *certiorari*, Linda Alford did not challenge the Court of Appeals' holding regarding the valuation of the closely held corporation, Cannonwall Plantation. Our decision does not affect that portion of the Court of Appeals' decision.

3

the initial alimony award, this Court, in ***Harris v. Harris***, overruled ***Spalding*** and held that derivative Social Security benefits "*do not* constitute a special circumstance triggering an automatic reduction in alimony[]" and that when a spouse receives derivative Social Security benefits, "the trial court must weigh all the circumstances of both parties and find that an unforeseen material change in circumstances occurred to modify alimony." ***Harris***, 241 So. 3d at 628. The Court of Appeals found that, since ***Harris*** overruled ***Spalding***, "[t]he alimony award in this case should be reevaluated in light of ***Harris***." ***Alford***, 2019 WL 3297142, at *6. The Court of Appeals reasoned that "***Harris*** specifically holds that derivative Social Security benefits will not justify a subsequent modification of alimony if the benefits were anticipated or foreseeable at the time of the divorce." ***Id.*** (citing ***Harris***, 241 So. 3d at 628-29). The Court of Appeals concluded that since it was foreseeable that "Linda [Alford] would receive derivative benefits in the near future[,]" which "[would] not justify a later modification of alimony," the chancellor should have considered Linda Alford's inevitable receipt of derivative Social Security benefits in its "*initial* determination of alimony." ***Id.***

¶7. As for Nat Alford's two other arguments concerning the alimony award, the Court of Appeals declined to address those arguments because it reversed and remanded the case "for further consideration in light of ***Harris***[.]" ***Id.*** Accordingly, the Court of Appeals ordered the chancellor to consider the remaining arguments on remand. ***Id.***

¶8. Nat Alford argued that the chancellor erred by awarding Linda Alford attorney fees and expert witness fees because she "received substantial assets in the equitable division of assets," giving her the ability to pay without having to liquidate all of her assets in order to

4

pay the fees. The Court of Appeals found that the chancellor erred by awarding Linda Alford attorney fees because she had "failed to meet her burden of establishing an inability to pay her fees." *Id.* at *8. According to the appeals court, she had not met her burden because "the record [was] insufficient to demonstrate [Linda's] inability to pay." *Id.* (second alteration in original) (internal quotation marks omitted) (quoting *Gray v. Gray*, 745 So. 2d 234, 239 (Miss. 1999)). The court reasoned that the record was insufficient because Linda Alford had been paying some of her fees in monthly installments, and she had received "nearly half of the marital assets" with no evidence demonstrating she "would have been required to liquidate any significant part of her savings" in order to pay. *Id.* Thus, the Court of Appeals reversed and rendered the chancellor's award of attorney fees.

¶9.     Linda Alford filed for a writ of *certiorari*, which this Court granted. She argues that the Court of Appeals should not have applied *Harris* because her case did not involve a modification of alimony. She argues also that the appeals court's interpretation of *Harris* was erroneous because that court "misconstrued *Harris* as requiring a chancellor to automatically adjust an alimony award on the front end based on the expectation of future Social Security benefits," which "is the very thing that *Harris* condemns."

¶10.    Additionally, Linda Alford argues that the Court of Appeals' reversal of her attorney fees conflicts with the holding in *Branch v. Branch*, 174 So. 3d 932 (Miss. Ct. App. 2015). She claims her only means for paying her fees is by "utilizing her share of the marital estate." Therefore, she asks this Court to reestablish the chancellor's award of attorney fees and also to award her appellate attorney fees.

**STANDARD OF REVIEW**

¶11.    It is well settled that "[a]limony awards are within the discretion of the chancellor, and his discretion will not be reversed on appeal unless the chancellor was manifestly in error in his finding of fact and abused his discretion." *Harris*, 241 So. 3d at 625 (internal quotation marks omitted) (quoting *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993)). "Chancellors are afforded wide latitude in fashioning equitable remedies in domestic relations matters, and their decisions will not be reversed if the findings of fact are supported by substantial credible evidence in the record." *Gutierrez v. Gutierrez*, 233 So. 3d 797, 806 (Miss. 2017) (internal quotation mark omitted) (quoting *Henderson v. Henderson*, 757 So. 2d 285, 289-90 (Miss. 2000)). But "[i]f we find the chancellor's decision manifestly wrong, or that the court applied an erroneous legal standard, we will not hesitate to reverse." *Armstrong*, 618 So. 2d at 1280 (citing *Smith v. Smith*, 607 So. 2d 122, 126 (Miss. 1992)).

¶12.    "For questions of law, we employ a de novo standard of review and will only reverse for an erroneous interpretation or application of the law." *Lewis v. Pagel*, 233 So. 3d 740, 746 (Miss. 2017) (internal quotation marks omitted) (quoting *Boyd v. Tishomingo Cty. Democratic Exec. Comm.*, 912 So. 2d 124, 128 (Miss. 2005)).

¶13.    "Generally the award of attorney's fees in a divorce case is left to the discretion of the trial court." *Hemsley v. Hemsley*, 639 So. 2d 909, 915 (Miss. 1994) (internal quotation marks omitted) (quoting *Cheatham v. Cheatham*, 537 So. 2d 435, 440 (Miss. 1988)); *see also* *Ballard v. Ballard*, 255 So. 3d 126, 135 (Miss. 2017) ("We have said time and time again that an award of attorney's fees in divorce cases is largely a matter entrusted to the sound

6

discretion of the trial court." (internal quotation marks omitted) (quoting *Armstrong*, 618 So. 2d at 1282)).

## DISCUSSION

### I. Alimony Award

### A. Did the Court of Appeals interpret *Harris* erroneously?

¶14. The Court of Appeals held that the chancellor should have considered Linda Alford's near-future reception of derivative Social Security benefits when it made her initial alimony award because "*Harris* specifically holds that derivative Social Security benefits will not justify a subsequent modification of alimony if the benefits were anticipated or foreseeable at the time of the divorce." *Alford*, 2019 WL 3297142, at *6 (citing *Harris*, 241 So. 3d at 628-29).

¶15. Linda Alford argues that the Court of Appeals erred in its interpretation of *Harris*. According to her, *Harris* concerned "whether the other financial circumstances of the parties had materially changed so as to warrant a modification of alimony, when coupled with the advent of Social Security benefits" and did not concern whether derivative Social Security benefits were foreseeable. This Court agrees. *Harris* did not hold that the future receipt of derivative Social Security benefits is a foreseeable circumstance that would not allow a subsequent modification of alimony; rather, *Harris* said that when an alimony recipient acquires derivative Social security benefits, the alimony payor may seek a downward modification of his or her alimony payments after the chancery court considers the totality of the parties' circumstances, not merely the receipt of derivative Social Security benefits.

7

*Harris*, 241 So. 3d at 628. We find that *Harris* requires the chancellor to examine the impact the reception of derivative Social Security benefits causes and not the reception alone. We find also that it is the unpredictable impact that stymies foreseeability at the time of the initial alimony award. Thus, we hold that the Court of Appeals interpreted *Harris* incorrectly.

¶16.    At the time of the Alfords' divorce, the law regarding derivative Social Security benefits provided that the spouse paying alimony was entitled to an automatic credit toward his alimony obligation "because the amount was based on his income." *Harris*, 241 So. 3d at 626 (citing *Spalding*, 691 So. 2d at 439).  In 2018, this Court overruled *Spalding* "to the extent that it holds an alimony reduction to be automatic for Social Security benefits derived from the alimony-paying spouse's income." *Id.* at 624. The issue in *Harris*  involved a modification of a property settlement agreement, and this Court held that

> Social Security benefits derived from the other spouse's income *do not* constitute a special circumstance triggering an automatic reduction in alimony. When a spouse receives Social Security benefits derived from the other spouse's income, the trial court must weigh all the circumstances of both parties and find that an unforeseen material change in circumstances occurred to modify alimony.

*Harris*, 241 So. 3d at 628.

¶17.    *Harris* did not say that derivative Social Security benefits can never be a basis for modifying an alimony award, only that the reception of derivative Social Security benefits does not "trigger[] an automatic reduction in alimony." *Id.* The Court in *Harris* said that when a person receives derivative Social Security benefits, there can be a later modification of alimony as long as the chancellor "weigh[s] all the circumstances of both parties and find[s] that an unforeseen material change in circumstances occurred to modify alimony."

*Id.* If we were to agree with the Court of Appeals that "derivative Social Security benefits will not justify a subsequent modification of alimony if the benefits were anticipated or foreseeable at the time of the divorce[,]" *Alford*, 2019 WL 3297142, at \*6 (citing *Harris*, 241 So. 3d at 628-29), one would not be able to seek a modification under *Harris* because it is foreseeable that most Americans will receive Social Security benefits at some point in their lives.

¶18.    The Court of Appeals found that it was "clearly foreseeable" that Linda Alford would receive derivative Social Security benefits "in the near future" and it was the reception of those benefits that would not justify a later modification according to *Harris*. *Alford*, 2019 WL 3297142, at \*6. While it may be foreseeable that a litigant will receive Social Security benefits, the impact of the benefits on both parties cannot be anticipated or foreseen. The chancellor must consider such benefits in conjunction with "all the circumstances of both parties" in order to determine whether there is an "unforeseen material change in circumstances" that justifies modifying alimony. *Harris*, 241 So. 3d at 628. It also may be said that it is clearly foreseeable that a person will get older and/or a person's health will decline; yet courts have determined that these foreseeable events sometimes can create unanticipated, unforeseeable material changes in circumstances that justify the modification of alimony. *See* **Broome v. Broome**, 75 So. 3d 1132, 1141 (Miss. Ct. App. 2011) ("The chancellor found T.C.'s standard of living dramatically decreased over the years since the divorce decree due to his poor health and advanced age."); **Makamson v. Makamson**, 928 So. 2d 218, 221 (Miss. Ct. App. 2006) ("These are specific findings that the increased costs,

9

length of time before treatment was to begin and the stroke were not anticipated in the property settlement agreement."). *Contra* **Weeks v. Weeks**, 29 So. 3d 80, 90-91 (Miss. Ct. App. 2009) ("With the extensive testimony concerning Deborah's medical problems and the state of her health *before* the judgment after remand was entered, we cannot say that the increased expenses due to the progression of these problems was in any way unforeseeable by the parties.").

¶19.    In **Harris**, this Court considered the South Carolina case **Serowski v. Serowski** in deciding whether a modification of alimony "due to the start of Social Security benefits" was automatic or "require[d] a showing of a material or substantial change in circumstances[.]" **Harris**, 241 So. 3d at 628 (citing **Serowski v. Serowski**, 672 S.E. 2d 589, 593 (S.C. Ct. App. 2009)). In **Serowski**, the court did not find that the spouse's reception of Social Security benefits was a foreseeability that would not allow a modification of alimony. **Serowski**, 672 S.E. 2d at 593 ("[T]he court found Wife's increase in income due to her receipt of social security and annuity benefits had improved her ability to meet her needs."). Instead, the court upheld a modification of alimony by considering the impact the Social Security benefits had on the wife's income in conjunction with the increase in the wife's net worth and the husband's decline in health. *Id.* at 593-94 ("[T]he court properly considered both parties' economic circumstances in reaching its finding." (citing **Eubank v. Eubank**, 555 S.E. 2d 413, 417 (S.C. Ct. App. 2001))).

¶20.    Similarly, this Court determines that **Harris** does not hold that the mere reception of derivative Social Security benefits is a foreseeable circumstance that would preclude a

10

subsequent modification of alimony. *Harris*, 241 So. 2d at 628. In *Harris* we reversed and remanded, not because it was foreseeable that a person would receive derivative Social Security benefits, but because the trial court had failed to perform the proper analysis and determine whether all of the circumstances, including the impact the reception of derivative Social Security benefits had on both parties, constituted an unforeseen material change in circumstances. *Id.* at 628-29. Merely receiving derivative Social Security benefits alone is not enough to allow a modification of alimony because there must be judicial consideration of its impact on the parties, a factor that is not foreseeable at the time of the divorce. *See Ivison v. Ivison*, 762 So. 2d 329, 334 (Miss. 2000) ("An award of alimony can only be modified where it is shown that there has been a material change in the circumstances of one or both of the parties." (citing *Varner v. Varner*, 666 So. 2d 493, 497 (Miss. 1995))); *Tingle v. Tingle*, 573 So. 2d 1389, 1391 (Miss. 1990) ("This change, moreover, must also be one that could not have been anticipated by the parties at the time of the original decree." (citing *Morris v. Morris*, 541 So. 2d 1040, 1043 (Miss. 1989); *Trunzler v. Trunzler*, 431 So. 2d 1115, 1116 (Miss. 1983))).

¶21.	We clarify our holding in *Harris*: when an alimony payor seeks an alimony modification based on the payee's receipt of derivative Social Security benefits, the trial court must consider whether the impact of the derivative Social Security benefits on the parties constitutes a "material or substantial change in the circumstances[,]" *Tingle*, 573 So. 2d at 1391 (citing *Clark v. Myrick*, 523 So. 2d 79, 82 (Miss. 1988); *Shaeffer v. Shaeffer*, 370 So. 2d 240, 242 (Miss. 1979)), that arose after the original judgment and "could not have

11

been anticipated by the parties at the time of the original decree[,]" *Morris*, 541 So. 2d at 1043; *Trunzler*, 431 So. 2d at 1116, and whether the change in circumstances calls for an alteration of alimony under the factors governing alimony awards from *Armstrong*, 618 So. 2d at 1280. *See Steiner v. Steiner*, 788 So. 2d 771, 776 (Miss. 2001) ("The chancellor must consider what has become known as the *Armstrong* factors in initially determining whether to award alimony, the amount of the award, and in deciding whether to modify periodic alimony, comparing the relative positions of the parties at the time of the request for modification in relation to their positions at the time of the divorce decree." (citing *Tilley v. Tilley*, 610 So. 2d 348, 353-54 (Miss. 1992))).

**B.      Should chancellors consider a spouse's future derivative Social Security benefits in the initial determination of alimony?**

¶22.    The Court of Appeals determined that since it was "clearly foreseeable" that Linda Alford was to receive derivative Social Security benefits "in the near future[,]" then the only allowable time for a chancellor to consider derivative Social Security benefits is at "the *initial* determination of alimony." *Alford*, 2019 WL 3297142, at \*6. *Harris* does permit a modification of alimony once an alimony payee begins receiving derivative Social Security benefits, as long as the chancellor conducts the proper analysis. *Harris*, 241 So. 3d at 628. But this Court has not addressed whether a chancellor is to consider future, not-yet-received derivative Social Security benefits at the initial alimony determination.

¶23.    Linda Alford argues that the Court of Appeals' decision to consider derivative Social Security benefits at the initial alimony determination will force chancellors to engage in

12

speculation about the impact of future Social Security benefits because "there are too many unknowns to be able to conduct such an analysis in advance."

¶24. While it can be said that it is foreseeable that most Americans eventually will receive Social Security benefits, this Court is of the opinion that there will be numerous cases that present so many unknowns at the initial alimony determination that chancellors would be forced to speculate about the amount and the impact such benefits will have on the parties. Some of the unknown factors might be: (1) when the payor spouse actually will receive Social Security benefits; (2) whether that spouse will begin to receive Social Security benefits while still working; (3) what amount of Social Security benefits the payor spouse will receive; (4) how many additional divorces, if any, the payor spouse may have before receiving benefits; and (5) the health conditions of the parties. Of course, this list is not exhaustive.

¶25. Here, the chancellor conducted an *Armstrong* analysis, taking into consideration that Nat Alford and Linda Alford were nearing retirement age but acknowledging that both were working at the time of the trial. At trial, Nat Alford provided the chancellor estimates of his potential Social Security benefit amounts, which had been obtained from the local Social Security Office and were based on his previous wages through 2015, for the retirement ages of sixty-three, sixty-six, and seventy. Additionally, an expert witness, John Paris, testified that Linda Alford could claim derivative Social Security benefits at the age of sixty-six and a half and that she would get one-half of Nat Alford's benefits.

¶26. Even with this evidence, it still was impossible for the chancellor to know the actual time Linda Alford would begin to draw Social Security benefits or the amount she would receive. Nat Alford testified that he planned to retire at sixty-seven but he testified also that he believed he could work another ten years and agreed that it was his choice on when to retire. For a chancellor to engage in speculation about derivative Social Security benefits is not fair to either party. If the chancellor guesses wrong, under the Court of Appeals' decision, the parties would not be able to seek modification. *See Ivison*, 762 So. 2d at 334 (citing *Varner*, 666 So. 2d at 497); *Tingle*, 573 So. 2d at 1391 (citing *Morris*, 541 So. 2d at 1043; *Trunzler*, 431 So. 2d at 1116). We decline to require chancery courts to engage in such speculation. Parties may seek modification at a later date when they actually are drawing Social Security benefits and when the chancellor has an actual basis on which to "compar[e] the relative positions of the parties at the time of the request for modification in relation to their positions at the time of the divorce decree." *Steiner*, 788 So. 2d at 776.

¶27. While *Harris* and the Alfords' case are procedurally different, we find that *Harris* applies here only to the extent that it overruled *Spalding* by establishing that there shall be no automatic reductions in alimony for derivative Social Security benefits. *Harris*, 241 So. 3d at 628. Under *Spalding*, alimony had been reduced automatically when an alimony payee began drawing derivative Social Security benefits. *Id.* at 626 (citing *Spalding*, 691 So. 2d at 439).

¶28. While an alimony-paying former spouse may be entitled to a reduction in alimony when the other former spouse receives derivative Social Security benefits, the reduction is

not an automatic one. *Harris*, 241 So. 3d at 629. Because considering derivative Social Security benefits at the time of the initial alimony decree is fraught with too many unknowns and reducing alimony at the time of the initial alimony decree would violate *Harris* to the extent that it overruled *Spalding*, this Court holds that the consideration of derivative Social Security benefits shall be reserved exclusively for later modifications of alimony.

¶29.   We find that no harm will be suffered by either party by requiring them to wait until they actually are drawing Social Security benefits before seeking an adjustment in the alimony payments. Therefore, the Court of Appeals erred by remanding this case for the chancellor to consider Linda Alford's future, not-yet-received derivative Social Security benefits.

### C.    Because the Court of Appeals remanded Nat Alford's other arguments regarding the alimony award without giving them due consideration, we address them now.

¶30.   The Court of Appeals determined that since it had "already determined that the alimony award must be reversed and remanded for further consideration in light of *Harris*," it was not necessary to address Nat Alford's other arguments regarding the alimony award and ordered the chancellor to consider these arguments on remand. *Alford*, 2019 WL 3297142, at *6-7. Because we are reversing the Court of Appeals' decision, this Court must address Nat Alford's other arguments.

¶31.   Nat Alford presented three issues regarding the chancellor's alimony award to the Court of Appeals, arguing that

> the chancellor did not adequately consider that the parties are nearing retirement age and that  Linda will soon be eligible to receive Social Security

benefits. He also argues that the chancellor did not adequately consider the assets that Linda received as part of the equitable distribution of the marital estate, as well as the anticipated future income and returns that those assets will produce. Finally, Nat argues that Linda's claimed expenses are overstated.

*Id.* at \*1.

¶32. Nat Alford argued that the chancellor "did not adequately survey the relative financial situations of the parties after equitable division." After dividing the marital assets and debts, the chancellor awarded Nat Alford 51 percent of the parties' marital equity and awarded Linda Alford 49 percent of the parties' martial equity. Then, the chancellor conducted an *Armstrong* analysis and found that those factors weighed in favor of awarding Linda Alford alimony. *See Holcombe v. Holcombe*, 813 So. 2d 700, 704 (Miss. 2002) ("On appeal, this Court presumes that the chancellor considered all factors in the decision." (citing *Voda v. Voda*, 731 So. 2d 1152, 1155 (Miss. 1999))). We find no error with the chancellor's analysis, and we hold that the chancellor was correct in finding that the *Armstrong* factors weighed in favor of awarding alimony.

¶33. Nat Alford claimed also that Linda Alford's claimed expenses were not accurate. Linda Alford was questioned about her expenses at trial. This Court has stated that "[t]he chancellor is tasked with the duty of evaluating the evidence and the credibility of the witnesses." *Alexis v. Black*, 283 So. 3d 1105, 1110 (Miss. 2019). We find that Nat Alford's argument is without merit because the chancellor did consider the evidence about Linda Alford's expenses and in fact did reduce some of them. *See Alford*, 2019 WL 3297142, at \*5 n.3. We find that the chancellor considered the *Armstrong* factors and was correct in

finding that the factors weighed in favor of awarding Linda Alford $5,000 per month in periodic alimony.

## II. Attorney Fees

¶34. This Court has held that "the award of attorney's fees in a divorce case is left to the discretion of the trial court." **Hemsley**, 639 So. 2d at 915 (internal quotation mark omitted) (quoting **Cheatham**, 537 So. 2d at 440). We held in **Gray v. Gray** that

> It is well settled in Mississippi that if a party is financially able to pay an attorney, an award of attorney's fees is not appropriate. **Benson v. Benson**, 608 So. 2d 709, 712 (Miss. 1992); *See* **Martin v. Martin**, 566 So. 2d 704, 707 (Miss. 1990). Furthermore, if the record is insufficient to demonstrate the wife's inability to pay the attorney's fees, then an award of the fees is an abuse of discretion. **Benson**, 608 So. 2d at 712; **Jones v. Starr**, 586 So. 2d 788, 792 (Miss. 1991).

**Gray**, 745 So. 2d at 239.

¶35. The chancellor awarded Linda Alford $11,000 in fees: $5,000 for attorney fees and $6,000 for expert witness fees. The Court of Appeals found that Linda Alford had failed to meet her burden of proof because the record failed to show her inability to pay the fees. **Alford**, 2019 WL 3297142, at *8. The Court of Appeals reasoned that Linda Alford had the ability to pay because "Linda [Alford] received nearly half of the marital assets, which her attorney agreed would be sufficient to allow her to pay her attorney's fees." **Id.**

¶36. In her petition for a writ of certiorari, Linda Alford claims that the Court of Appeals violated its own holding that, "a party is not required to liquidate all assets to pay for attorney's fees[,]" and the only means she has for paying her fees is by utilizing her share of

the marital estate because she cannot be expected to pay her attorney fees based on her $1,500 per month income. *Branch*, 174 So. 3d at 946.

¶37. Although it is true that Linda Alford earns only $1,500 per month from her job, she was awarded alimony and a significant amount of the marital assets to enable her to pay her attorney fees and her expert witness fees without significantly depleting her assets.

¶38. While we recognize that Linda Alford's attorney's testimony and her own testimony seem to call her ability to pay the attorney fees into question, we find that the record lacked sufficient evidence to establish her inability to pay. As the Court of Appeals stated, Linda Alford failed to establish how much she still owed her attorney and she failed to show that she "would have been required to liquidate any significant part of her savings to pay her attorney or her expert." *Alford*, 2019 WL 3297142, at *8. We find that the Court of Appeals did not err by reversing and rendering the chancellor's award of fees.

¶39. Additionally, Linda Alford asked in her petition for this Court to award her appellate attorney fees. We find that Linda Alford should not be awarded appellate attorney fees.

## CONCLUSION

¶40. The Court of Appeals erroneously interpreted *Harris*. When an alimony payee begins receiving derivative Social Security benefits and the payor seeks to modify the alimony award, chancellors are to consider the impact of the benefits upon the parties in light of the totality of their circumstances at that time. A chancellor cannot make a prospective determination concerning the effect of a spouse's derivative Social Security benefits at the

18

time of the initial alimony award. Such a determination may not be made until the parties actually begin to receive Social Security benefits and a modification of the award is sought.

¶41. The Court of Appeals erred by reversing the chancellor's award of alimony. Accordingly, we reverse the judgment of the Court of Appeals and reinstate the chancellor's award of $5,000 per month in periodic alimony. We find also that the Court of Appeals' reversal and rendering of the chancellor's award of attorney fees should be affirmed.

¶42. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE ALIMONY AWARD BY THE CHANCERY COURT OF SHARKEY COUNTY IS REINSTATED AND AFFIRMED.**

**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**